# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Application of Holland Middle East | ) | No. 08 CV 1344 |
| Trading Ltd. | ) | |
| to Obtain Discovery For Use in a | ) | Hon. Ruben Castillo |
| Suit Pending in the | ) | |
| Haarlem District Court of the | ) | Magistrate Judge Martin C. Ashman |
| Kingdom of the Netherlands. | ) | |

## HOLLAND MIDDLE EAST TRADING LTD.'S OBJECTIONS AND RESPONSES TO RESPONDENTS' SUBPOENAS AND FIRST REQUEST FOR <u>PRODUCTION OF DOCUMENTS</u>

Applicant Holland Middle East Trading Ltd. ("HMET"), by its attorneys, submits

the following objections and responses to Respondents' subpoenas and First Request for

Production of Documents.   HMET makes a single response to the Respondents' four identical

requests for documents.

### <u>GENERAL OBJECTIONS</u>

1.     HMET objects to each document request to the extent that it seeks

production of information protected by the attorney-client privilege or work product doctrine.

2.     HMET objects to each document request to the extent that it seeks

production of information previously produced in the Netherlands litigation, or that will be

produced or filed with the court in the Netherlands.  *See* **Exhibits 1 and 2** attached to these

Objections and Responses.

3.     HMET objects to each document request to the extent that it seeks

production of information already in the possession custody or control of the Respondents or the

defendants in the litigation pending in the Netherlands.

4.     HMET objects to each document request to the extent that it is overly

broad, unduly burdensome, seeks information that is not described with sufficient particularity,

or seeks information that is neither relevant to the subject matter of the Dutch litigation or

reasonably calculated to lead to the discovery of admissible evidence.

       5.    HMET objects to each document request to the extent that it fails to

specify a time period for which the documents are requested.

## SPECIFIC RESPONSES

### Request No. 1:

    Any and all documents relating to the corporate and/or legal structure of each and every entity within the HMET Group, including, but not limited to, deeds and/or articles of incorporation; deeds and/or articles of association; business licenses; organizational charts; bylaws; Board of Directors resolutions and meeting minutes; submissions to any Chamber of Commerce or similar business organization, wherever located; and any and all documents relating to HMET's ability or inability to conduct any business outside of the "Jebel Ali Free Zone" in Dubai, United Arab Emirates.

### RESPONSE:

    Subject to the general objections set forth above, HMET will produce responsive,

non-privileged documents. HMET has already produced the documents listed in Exhibit 1.

However, the fact that Power Plate Trading was partly owned by a UAE-domiciled person (a)

has never been stated as the basis for a claim, (b) does not bear on damages, and (c) has never

been cited by Power Plate as grounds for termination. Therefore, documents relating to that

topic are not reasonably calculated to lead to the discovery of admissible evidence in the Dutch

proceeding.

### Request No. 2:

    Any and all documents relating to Giezen and van Aspert's identification, business, employment, and/or travel documents, including, but not limited to, passports, visas, work permits, residency cards, driver's licenses, business licenses, accreditations, business organization memberships, and business cards.

**RESPONSE:**

HMET objects to the production of documents pertaining to Giezen and van Aspert's identification. Request No. 2 seems purposely intrusive and oppressive, and appears to be intended to discourage HMET from attempting to collect evidence in this forum. None of the document requests are reasonably calculated to lead to the discovery of admissible evidence in the Dutch proceeding.

**Request No. 3:**

> Any and all documents relating to the business relationship between any and all HMET Group entities and PPI (including the origins, conduct, and termination thereof), including, but not limited to, internal and external communications within, between, among the HMET Group and PPI; HMET Board of Director resolutions and/or minutes; letter agreements; memoranda of understanding; letters of intent; contracts; and agreements in any form, including any and all drafts of the foregoing documents.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. HMET has already produced the documents listed in Exhibit 1. However, the Dutch defendants have raised no claims or defenses that can be supported or refuted by such documents, and therefore the request is not reasonably calculated to lead to the discovery of admissible evidence in the Dutch proceeding.

**Request No. 4:**

> Any and all documents relating to your removal, covering, or obscuring of any mark, label, plate, tag, or other indication, in whatever form it existed, that any particular piece(s) of Power Plate equipment had been manufactured in the People's Republic of China ("China"), including, but not limited to, any and all documents relating to (a) your contention that any particular piece(s) of Power Plate equipment had not, in fact, been manufactured in China; (b) your contention that PPI at any time authorized - directly or indirectly, explicitly or implicitly - your removal, covering, or obscuring of such markings; and (c) your contention that your removal, covering, or obscuring of such markings in no way negatively affected, or caused damage to, PPI.

3

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. HMET has already produced most of its responsive documents on this topic, and will produce others shortly. *See* Exhibit 1 and 2.

**Request No. 5:**

Any and all documents relating to your transfer, or attempted transfer, of any and all rights of distribution of Power Plate equipment under your written Licensee Agreements with PPI to any other person or entity, including, but not limited to (a) any communications, negotiations, dealings, and/or agreements in any form with (i) any and all "sub-distributors" and/or "representatives" in any country, (ii) Power Plate Trading, LLC, (iii) Mohamad Ali Rashid Suwailem Ajtabi, (iv) any person or entity within the nation of Lebanon, (v) HSBC Bank Middle East, (vi) the Landmark Group, (vii) Punj Lloyd, (viii) Sam International General Trading LLC, (ix) the Republic of Iran, and (x) any and all internet search engine entities and/or websites; and (b) your contention that PPI at any time authorized - directly or indirectly, explicitly or implicitly - any such transfer or attempted transfer of your Power Plate equipment distribution rights under the written Distribution Agreement(s) between you and PPI.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. Most of the documents that exist have already been produced in the Dutch proceedings, and the remaining documents will be submitted in that proceeding shortly. *See* Exhibits 1 and 2.

**Request No. 6:**

Any and all documents relating to the countries in which, you contend, you were authorized by the written Distribution Agreement(s) between HMET and PPI to distribute Power Plate equipment, including, but not limited to, documents relating to the following: (a) your contention that you were authorized to distribute Power Plate equipment in Bangladesh, Eritrea, Ethiopia, India, Iraq, Kenya, Libya, Morocco, Nepal, Pakistan, Sri Lanka, Sudan, Tunisia, and Zanzibar, as stated in your website; (b) your contention that you had an "exclusive contract for the whole Middle East, Africa - except South Africa - and India" with PPI for the distribution of Power Plate equipment, as set forth in Exhibit 13 to

4

PPI's Plea Notes of 19 December 2006; (c) your contention that you were authorized to distribute Power Plate equipment "in all Islamic countries;" (d) your contention that PPI had no exclusive distributors in Morocco and Tunisia prior to the time you attempted to obtain those distributorships; (e) your contention that PPI at any time authorized you - directly or indirectly, explicitly or implicitly - to obtain or to exercise any exclusive distributorship in any of the foregoing countries, including documents relating to any communications between you, on the one hand, and Mascha van der Meer and/or Birgit Radszat, on the other; (f) any and all "leads" that, you contend, PPI provided to you with respect to the distribution of Power Plate equipment outside of the countries expressly covered by your written Distribution Agreement(s) with PPI; and (g) your creation and operation of a website with the URL www.poweplateme.com.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. Most of the documents are in the Dutch defendants' possession, as they have already been submitted in the Dutch proceeding. The remainder will be submitted in that proceeding shortly. *See* Exhibits 1 and 2.

**Request No. 7:**

Any and all documents relating to communications, negotiations, and/or agreements, in whatever form, between you and (a) any and all actual and/or potential competitors of PPI, and (b) any and all customers or clients of PPI located and/or residing in countries in which you were not expressly authorized to distribute Power Plate equipment under the Licensee Agreements, including, but not limited to, Virgin Active, Virgin Atlantic, and Madonna.

**RESPONSE:**

HMET objects to the vague phrase "potential competitors," and lacks the knowledge to define who PPI's actual and potential competitors could be. HMET was authorized to distribute equipment in all countries in which it sold equipment, and defendants do not claim in the Dutch suit that their termination was based on events pertaining to any of the entities referred to in this request. Nonetheless, subject to these objections, and the general objections set forth above, HMET will produce responsive, non-privileged documents.

**Request No. 8:**

> Any and all documents relating to any and all claims and/or contentions that you have made, submitted, or asserted in the Foreign Litigation, including, but not limited to, those relating to PPI's alleged breach of the Licensee Agreements, as well as any and all documents relating to any communications with any person regarding Respondents, PPI, and/or the Foreign Litigation.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. However, these documents either have been or will be produced shortly in the Dutch court. *See* Exhibits 1 and 2.

**Request No. 9:**

> Any and all documents relating to communications internal to Power Plate, including communications between and/or among any Power Plate directors, officers, employees, agents, representatives, distributors, and/or in-house or outside counsel.

**RESPONSE:**

As noted above in the general objections, HMET objects to producing documents explicitly already in the possession and control of the Respondents or the Dutch defendants.

**Request No. 10:**

> Any and all documents relating to your assets, income, expenses, and debts, including, but not limited to, income tax returns, employment agreements, employment termination letters, payroll statements, paychecks, distributions, shareholder agreements, stock holdings, stock options, restricted shares, returns of capital, capital appreciation, interest income, bank statements, loan statements, books and records, balance sheets, income statements, profit and loss statements, cash flow analyses, net worth analyses, financial statements (audited and/or unaudited), sales figures, marketing expenses, real estate closing documents, real estate assessments and/or valuations, business valuations, bankruptcy petitions, liens, attachments, and legal claims and/or judgments against you.

**RESPONSE:**

HMET objects to this request, which appears to call for the production of all documents pertaining to every aspect of HMET's financial affairs. Request No. 10 is overly

intrusive and oppressive, and seems calculated to discourage HMET from attempting to gather

evidence in this district. The Dutch defendants have made no monetary claims against HMET,

and no judgments have been rendered against it. Therefore this information is neither relevant

nor reasonably calculated to lead to the discovery of admissible evidence in the Dutch

proceeding.

**Request No. 11:**

> Any and all documents relating to your contention that you have suffered any
> financial loss or damage as a result of any alleged wrongdoing on the part of any
> defendant in the Foreign Litigation, including, but not limited to, documents
> relating to the following: (a) your contention that you are entitled to 22 million
> Euros in damages as a result of PPI's alleged breach of your written Distribution
> Agreement(s) with PPI; (b) your contention that HMET controlled 19% of world-
> wide Power Plate sales (exclusive of the United States and the Netherlands)
> immediately prior to the termination of the operative written Distribution
> Agreement; (c) your contention that you have suffered any financial loss or
> damage as a result of PPI's sales of any of its patent rights to any other person or
> entity; (d) your contention that you have suffered any financial loss or damage
> with respect to your ownership and/or operation of a fitness center in Dubai,
> U.A.E. (the Power Plate Center); (e) your contention that you incurred marketing
> costs related to your attempts to establish distributorships in countries not
> explicitly set forth in the Licensee Agreements; (f) your 30 September 2006 offer
> to sell your interests in HMET to PPI for a figure seven (7) times your claimed
> annual net profit from the operation of HMET; (g) sales projections for HMET;
> (h) forward-looking business plans, projections, pro formas, and/or other
> estimates of your anticipated future financial performance with respect to your
> distribution of Power Plate equipment; (i) any and all expert analyses and/or
> valuations of your claimed financial losses or damages; and (j) any and all lay or
> expert analyses of the opinions rendered by PricewaterhouseCoopers and by
> Deloitte & Touche in the Foreign Litigation with respect to your claimed damages
> in that Litigation.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive,

non-privileged documents in the Dutch court. HMET has already produced many documents

responsive to this request during the Dutch proceedings. *See* Exhibit 1. Expert reports and

analyses will be completed on or about June 18, 2008, and will be tendered to the Dutch

defendants at that time.

**Request No. 12:**

> Any and all documents relating to any and all policies of insurance that you carried on any of the HMET Group entities, including, but not limited to, insurance policies, amendments, and riders; insurance claims; tender letters; coverage letters; insurance payments; and/or reimbursements, indemnifications, and/or subrogations.

**RESPONSE:**

> HMET objects to the production of documents pertaining to all policies of

insurance, which do not appear to be related to any claim or defense in the Dutch suit.  Request

No. 12 seems to be intended to discourage HMET from seeking evidence in this district.  The

Dutch defendants have made no monetary claims against HMET, and no judgments have been

rendered against it.  Therefore this information is neither relevant, nor reasonably calculated to

lead to the discovery of admissible evidence in the Dutch proceeding.

Dated: April 21, 2008

One of the Attorneys for Applicant Holland Middle
East Trading Ltd.

Peter V. Baugher (ARDC#013282)
Lindsay Wilson Gowin (ARDC#6284270)
Schopf & Weiss LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

## CERTIFICATE OF SERVICE

I, Lindsay Wilson Gowin, an attorney, hereby certify that I caused a copy of the

foregoing to be served by via regular post delivery and e-mail on this 21st day of April, 2008

upon the following individuals:

> Scott A. Meyers
> Kurt Stitcher
> David W. Porteous
> Amy A. Pines
> Levenfeld Pearlstein, LLC
> 2 North LaSalle Street, Suite 1300
> Chicago, Illinois 60602
> Facsimile: 312.346.8434

Lindsay Wilson Gowin

# EXHIBIT 1

**Exhibit 1**

**Documents HMET Has Already Produced in the Dutch Action
and the Request to Which They Correspond**

Request No. 1:
- Yearly accounts for the period 30 September 2004 – 30 September 2005 of HMET
- Annual accounts of HMET 2005/2006 including the turn over of the Power Plate Center
- Refurnishing costs of the Power Plate Center
- Inventory costs of the Power Plate Center
- Report in which the specific damages are set out

Request No. 2:  HMET objects to this request in its entirety

Request No. 3:
- Licensee Agreement of 20 September 2004
- Licensee Agreement of 1 June 2005
- E-mail of 28 October 2005 of Mirjam Aalbers to HMET
- E-mail of 19 December 2005 of Aalbers to Van Aspert
- E-mails of 9 and 10 September 2006 between Minter and Giezen
- E-mails of 19 June and 15 July 2006 of Mark Minter to Frans Giezen
- Several e-mails in which the directors in various orders are copied in (cc)
- A copy of the draft of the new agreement between PPI UK and HMET
- Purchase invoices
- Sales invoices

Request No. 4:
- E-mail of 29 March 2005 of Giezen to Chris de Groot of PPI
- Commercial Invoice of 4 July 2006
- E-mail of John Wilson of 7 December 2005
- "Certificate of Origin", in which PPI itself declares that the Power Plates, shipped to HMET with the vessel "CMA CGM Othello" originate from "The Netherlands"

Request No. 5:
- E-mails from which it appears that PPI already has known about that HMET appointed sub distributors in her territory to be able to sell Power Plates
- E-mail of 19 April 2006 of Minter to Elias Gannage
- E-mail of 5 April 2005 of Van Aspert to Mirjam Aalbers and the draft for a contract with a sub-distributor to be appointed by HMET in Saudi-Arabia
- E-mail correspondence of 11-16 April 2006 between Giezen and Minter
- E-mail of 27 March 2006 of Giezen to Minter

- E-mail of 27 March 2006 of claimant to PPI
- E-mail of 19 December 2005 of Aalbers to Van Aspert
- Agreement with HSBC
- Correspondence with the Iranian sub distributor about the Iran contract
- Letter of SAM International General Trading LLC
- E-mail of 10 December 2006 of V. Santosh Kumar
- Information relating to the Landmark Group
- E-mails of 11 March 2007 of Deepak Srivastava

Request No. 6:
- Photo of the website www.hollandenterprisesgroup.com
- E-mail correspondence of 28 and 29 July 2005 between Mascha van der Meer and Giezen and Van Aspert
- E-mail of 13 October 2005 of HMET to Birgit Radszat
- "Leads" sent through by PPI to HMET
- Several e-mails in which the directors in various orders are copied in (cc)

Request No. 7:
- E-mail of 23 September 2006 of Van Aspert to Rob Vliek

Request No. 10:  HMET objects to this request in its entirety.

Request No. 11:
- Faxcopy of 2 January 2007 from counsel for claimants to Mrs. L. Meulman with attachment
- E-mail of 28 October 2005 of Mirjam Aalbers to HMET
- Yearly accounts for the period 30 September 2004 – 30 September 2005 of HMET
- Purchase invoices
- Sales invoices
- Agreement with HSBC
- Letter of SAM International General Trading LLC
- E-mail of 10 December 2006 of V. Santosh Kumar
- Information relating to the Landmark Group
- E-mails of 11 March 2007 of Deepak Srivastava
- Annual accounts of HMET 2005/2006 including the turn over of the Power Plate Center
- Refurnishing costs of the Power Plate Center
- Inventory costs of the Power Plate Center
- Report in which the specific damages are set out

Request No. 12:  HMET objects to this request in its entirety

# EXHIBIT 2

**Exhibit 2**

**Additional Documents HMET Will Produce**

1.    E-mails between Minter and Gannage between 10-15 October, and 25-28 October 2006

2.    E-mails between Minter and Aalbers between 7-12 October 2006

3.    Signed contract with distributor Al Kamda (successor of HMET)

4.    E-mail between Minter and Chris de Groot of 22 February 2005

5.    E-mails between Minter and David Morrell between 20 - 26 October 2006

6.    E-mails between Minter and Hill between 25 August 2006 - 10 September 2006 relating to Morocco and Power Plate France

7.    E-mails between Minter and Chris Hill between 10-25 December 2006

8.    "Updated memo PPI" as exchanged by Hillman to others on 6 June 2006

9.    Power Point presentation about the huge potential of the Middle East showed by Hill in December 2006 at a meeting with Al Kamda, Dubai

10.   Copy of invoice aan Centrum Industries Pvt Ltd. Bangalore India of 26 October 2006 Invoice nr 2006.0166 Pro-forma no: PPINT0041

11.   Copy of Invoice by PPI to Lebanon of 13 October 2006 to Mr. Rafed Al Khorafi C/o Tong Rizk Beirut Invoice nr. PPINV060038

12.   Copy of Invoice by PPI to Kuwait of 29 August 2006 to Mr. Fahed Invoice nr. PPINV060025

13.   Copy of excel sheet August - September 2006 "NEWCONTRACTSTATUSBOARD1909.xls

14.  Sales numbers specified per month of Harrods in London including all delivery addresses for 2006 and 2007 as far as the delivery addresses are situated in the territory of HMET

15.  E-mails between Minter and/or Hilmann and/or Van der Meer and/or Fisher and/or David Morrell between July 2006 and 1 November 2006 relating to Harrods and the public relations of Harrods

16.  All correspondence with regards to Madonna between Power Plate International B.V., Power Plate International Ltd, Van der Meer, Minter, Fisher, Hillman, Hill, Barbara Charone, Sarah Edlin, Moira Bellas, Power Plate North America, John Wilson from March 2006

17.  E-mails between Minter, Hillmann, Steve Borre, David Morrell, Allen Fisher, Guus van der Meer, Mirjam Aalbers of October 2006 relating to Airline and Virgin

18.  E-mails between Minter and Al Kamda and/or Chris Hill and Al Kamda (Minter in cc) and Minter and Hill and Al Kamda of October, November and December 2006 about Phillipe Van Wassenhove and Jane Heatly or with them in cc

# EXHIBIT B

IN THE NAME OF THE QUEEN

# JUDGMENT

---

## HAARLEM DISTRICT COURT

Civil law sector

Case number / Cause-list number: 131861 / KG ZA 07-44

**Judgment in interim relief proceedings**

in the case of

1.      the legal entity under the law of the British Virgin Islands
**HOLLAND MIDDLE EAST TRADING LTD.,**
with its registered office in Dubai, United Arab Emirates,
2.      **FRANCISCUS ANTONUS MARIA GIEZEN,**
residing in Dubai, United Arab Emirates,
3.      **PETRONELLA JOHANNA ELIZABETH VAN ASPERT,**
residing in Dubai, United Arab Emirates,
4.      the legal entity under the law of the United Arab Emirates,
**POWER PLATE TRADING LLC,**
with its registered office in Dubai, United Arab Emirates,
Plaintiffs in the principal action,
Defendants in the counterclaim action,
Local counsel *mr*. M. Middeldorp,
attorneys-at-law *mr*. J. Meuleman and *mr*. M.E. Koppenol-Laforce in Amsterdam,

versus

1.      the private limited liability company
**POWER PLATE INTERNATIONAL B.V.,**
with its registered office in Amstelveen, the Netherlands
2.      **MARK CLIVE MINTER,**
residing in Chicago, United States of America
3.      **ALLAN BRIAN HENRY FISHER,**
residing in London, United Kingdom,
4.      **LEE SCOTT HILLMAN,**
residing in Glencoe, United States of America,
Local counsel *mr*. L. Koning,
Attorneys-at-law *mr*. P. Roorda and *mr*. A.J. Fioole in Amsterdam,
5.      **AUGUSTINUS LEONARDUS NICOLAAS VAN DER MEER,**
residing in Hoofddorp, Municipality of Harlemmermeer, the Netherlands,
Local counsel *mr*. J.P. Koets,
Defendants in the principal action,
Counterclaimants.

The plaintiffs in the principal proceedings, defendants in the counterclaim proceedings, will be referred to hereafter individually as HMET Ltd., Giezen, Van Aspert and PPT and jointly, in the singular, as HMET.

The defendants in the principal proceedings, counterclaimants, will be referred to individually as PPI BV, Minter, Fischer, Hillman and Van der Meer and jointly, in the singular, as PPI.

**1.    The proceedings**

1.1.    The course of the proceedings is evident from:
- the summons
- the hearing
- the written arguments of HMET
- the change of claim
- the written arguments of PPI
- the written arguments of Van der Meer
- the counterclaim.

**2.**    Finally, judgment was scheduled.

1.2.    **The facts**

2.1    PPI BV brought proceedings before the Dubai Courts of First Instance (United Arab Emirates), under Suit Number 781/2006, against HMET Ltd., Power Plate Middle East, Giezen, Van Aspert and PPT, in which it claims:
*(...)*
*1- Confirm the termination of the agreements dated 20.9.2004 and 1.6.2005 as from 19.10.2006 in [and] cancel the same along with all their effects, and obligate the Defendants jointly and severally to pay the sum of Euro 28,000,000 or its Dirhams equivalent of 128,800,000 by way of material and moral damages for the Plaintiff.*
*2- Obligate the Defendants in the same capacities to pay legal interest as from the date of entitlement until final settlement along with the court fees, cost and advocacy fees*
*(...)*

2.2.    On 21 December 2006, the interim relief judge of this Court pronounced judgment in interim relief proceedings between HMET and PPI BV, the operative part of which reads, in so far as relevant here:
    *"orders PPI to withdraw the action brought under Suit Number 781/2006 before the Dubai Courts of First Instance against Holland Middle East Trade Company Limited, Power Plate Middle East, Frans Giezen, Petronella Johanna Elizabeth Giezen and Power Plate Trading LLC, on 9 January 2007 or any other earlier occasion, or to keep the proceedings in question dormant from the time of service of this judgment, without any financial or procedural impediments for HMET et al., while providing HMET et al. with a copy of the relevant instructions given to the local counsel in Dubai, until the Court in the Netherlands has decided on the claims to be filed by PPI in that action in a nonappealable and final judgment,*
    *rules that PPI, for each time that it acts in conflict with this injunction, must forfeit an incremental penalty of € 1,000,000 (one million euros) up to a maximum of € 28,000,000 (twenty-eight million euros),*

    *declares this judgment provisionally enforceable."*

2.3.    On 28 December 2006, the bailiff's copy of the judgment of 21 December 2006 (hereafter also: "the judgment") was served on PPI BV. In a letter and a fax message of the same date, the

131861 / KG ZA 07-44                                                                3
9 March 2007

---

aforesaid *mr*. Fioole sent J. Majid of the law firm engaged by PPI BV in Dubai the following
instruction.

*(Dear Mr Majid,*

*At the order of the President of the District Court in Haarlem, The Netherlands, dated 21 December*
*2006, we hereby instruct you on behalf of our client, Power Plate International B.V., to withdraw the*
*under Suit number 781/2006 filed claim by Power Plate International BV (also "the Plaintiff")*
*against Holland Middle East Trade Company Limited, Power Plate Middle East, Frans Giezen,*
*Petronella Johanna Elizabeth Giezen and Power Plate Trading L.L.C. (together: the "Defendants")*
*on 9 January 2007 or earlier occasion, or alternatively – without any financial or procedural*
*impediments to the Defendants – to keep the proceedings in connection with that claim inactive till the*
*Dutch court has in final instance disposed of the alleged claims of Power Plate International B.V. or*
*the order of the President of the District Court in Haarlem has been invalidated by a higher court of*
*competent jurisdiction, such entirely without prejudice to the underlying claims of Power Plate*
*International B.V. against the Defendants. (...)*

2.4.     On 9 January 2007, the attorney of PPI BV in Dubai requested the judge to stay the case until
1 February 2007 so that evidence could be gathered. That request was allowed.

2.5.     A record was made of the hearing of the Dubai Court of First Instance of 1 February 2007, the
English translation of which reads as follows:
*"(...)*
*At the public hearing held on Thursday, 01.02.07*

*Presiding Judge*
            *Rashid Mohammed Al Sameeri, Judge in the Court of First Instance*
*Members of the Bench*
            *Jamal Salim Al Jabiri, Judge in the Court of First Instance*
            *Asharaf Atouh Ahmed, Judge in the Court of First Instance*
*In Attendance: Khalid Abdullah Al Mulla, Court Clerk*
*Action No.        781-2006 Commercial-Full Bench*
*Following summons:*
*None of the parties attended.*

            DECISION

*The Court hereby decides to strike out the proceedings*
*(...)"*

2.6.     On 25 January 2007, HMET ordered PPI BV to pay EUR 1,000,000 as an incremental penalty
set in the judgment. On 2 and 5 February 2007, HMET levied several attachments in execution against
PPI BV.


3.      **The dispute in the principal action**

3.1.     After the change of claim, HMET claims:

1.      that PPI BV, Minter, Fisher, Hillman and Van der Meer should be prohibited, individually or
together with one or more others, from requesting, or having others request, the competent authorities
of the United Arab Emirates, including the judicial authorities, to seize the passports of Giezen and
Van Aspert, and that they should be ordered individually and jointly to refrain from any action that
could result in revocation of the passports of Giezen and Van Aspert. HMET claims as well that the
latter should be ordered individually and jointly to refrain from any action that could otherwise restrict

the freedom of movement of Giezen and Van Aspert, all this on pain of forfeiture of an incremental penalty of € 1,000,000 (one million euros) for each time that they violate the prohibition, and subsequently for each day, including part of a day, that the consequences of the violation continue, and on pain of forfeiture of € 1,000,000 (one million euros) for each day, including part of a day, that they fail to comply with one or both of the orders, or on pain of an incremental penalty to be determined by the interim relief judge.

2.      that PPI BV, Minter, Fisher, Hillman and Van der Meer should be ordered to withdraw the action brought under Suit Number 781/2006 at the Dubai Courts of First Instance against HMET Ltd., Power Plate Middle East, Giezen, Van Aspert and PPT within twenty-four hours of service of the judgment to be passed in this matter and to keep it withdrawn, or to do this on the earliest following occasion, until a decision has been taken on the liability of PPI BV towards HMET in nonappealable and final judgment passed in an action on the merits to be brought by HMET before the Haarlem District Court, and that PPI BV, Minter, Fisher, Hillman and Van der Meer should be ordered to provide written evidence of this to HMET Ltd., Giezen, Van Aspert and PPT on their written demand, on pain of forfeiture of an incremental penalty of € 1,000,000 (one million euros) for each day, including part of a day, that they fail to do so, or on pain of a penalty to be determined by the interim relief judge;

3.      alternatively, if and in so far as the interim relief judge does not allow the claim under 2., that PPI BV, Minter, Fisher, Hillman and Van der Meer should be ordered not to bring the action again that was brought under Suit Number 781/2006 before the Dubai Courts of First Instance against HMET Ltd., Power Plate Middle East, Giezen, Van Aspert and PPT, or otherwise reactivate it, until a decision has been taken on the liability of PPI BV towards HMET in nonappealable and final judgment passed in an action on the merits to be brought by HMET before the Haarlem District Court, on pain of forfeiture of an incremental penalty of € 1,000,000 (one million euros) for each day, including part of a day, that they violate such order, or on pain of a penalty to be determined by the interim relief judge;

all this while ordering PPI BV, Minter, Fisher, Hillman and Van der Meer jointly and severally to pay the costs of the proceedings.

3.2.    PPI puts forth a defence. The statements of the parties are discussed further below, in so far as they are relevant.

**4.      The dispute in the counterclaim action**

4.1.    PPI claims:

1.      Lifting of the attachments in execution levied by HMET and
2.      Cessation of the enforcement of the incremental penalties determined in the judgment, on pain of forfeiture of an incremental penalty.

4.2.    HMET puts forth a defence. The statements of the parties are discussed further below, in so far as they are relevant.

**5.      The ruling in the principal action**

5.1.    PPI puts forth a defence against HMET's intended change of claim. The interim relief judge rules as follows in this regard. The claim under 3.1.1. has been supplemented in the sense that HMET now claims that an incremental penalty should be attached to the order relating to the seizure of

passports. This fills in an apparent omission. For the rest, the changed claim is in line with the original claim and constitutes a toughening of that claim which has become necessary in connection with the way in which the action in Dubai can be struck out that became known after the summons was issued. The interim relief judge is of the opinion that this change will not unreasonably harm PPI's defence. The change of claim will therefore be allowed.

5.2.    Under 3.1.2. and 3.1.3, HMET claims that the interim relief judge should order PPI BV and its officers, on pain of forfeiture of an incremental penalty, to withdraw the action in Dubai and keep it withdrawn and provide HMET with written evidence of this, or prohibit PPI BV and its officers from activating the action.

5.3.    The basis of HMET's claim is that PPI has completely ignored the judgment of 21 December 2006. PPI did, after all, request postponement on 9 January 2007 for submission of evidence. Although the proceedings were struck out on 1 February 2007, they have not been finally struck out. HMET refers to the explanatory notes to Article 51 of the "Civil Procedure Code" of the United Arab Emirates (hereafter also "CPC"), the English translation of which reads:
*"If neither the plaintiff nor the defendant appears at any subsequent hearing, the court will pass judgment if it is competent to do so. If not, it will strike out the action, after checking the validity of the notification.*
*If the action remains struck out for sixty days and neither adversary seeks continuation, it will be deemed a nullity but all rights will be preserved."*

The situation has now occurred that the proceedings can be placed on the cause list again within a period of 60 days. HMET does not trust that PPI will not make use of that possibility.

5.4.    PPI disputes that it has not complied with the judgment of 21 December. It refers in this context to the instruction to its attorney in Dubai cited under the facts. Under Dubai procedural law, it is not possible to make a unilateral request to stay a case. As an explanation, it referred to Article 101 CPC, which reads in English: *The claim may be suspended if the adversaries agree not to proceed with it for a period not exceeding six months from the date of the court's confirmation of their agreement. This suspension shall have no effect on any definite date established by law for procedures. It shall not be permissible for either party to expedite the case during this period except with the agreement of his adversary."* A case may be stayed only at the unanimous request of the parties. Nor is it possible to request a stay prior to the hearing. That is why the attorney of PPI BV went to the court on 9 January 2007 and requested a stay at the hearing for the purpose of gathering evidence. That was merely a procedural manoeuvre to effect a unilateral stay, without financial impediments for HMET. Subsequently, the attorney of PPI BV went to the court on 1 February 2007 and informally let the court know that neither of the parties would appear. Thereupon, the court struck out the case in conformity with Article 51 CPC, as is evident from the record of the hearing. PPI does not intend to reactivate the case.

5.5.    Now that the case has been stricken out, the claim under 3.1.2. cannot be allowed. The case has already been withdrawn, albeit that the proceedings can be reactivated within 60 days from 1 February 2007. Although PPI has made it known that it is not planning to use that possibility, the interim relief judge is of the opinion that there is nevertheless cause to prohibit PPI from doing so on pain of forfeiture of an incremental penalty. PPI BV has, after all, filed a claim for EUR 28,000,000 in damages against HMET Ltd., which to date it has not substantiated further, let alone properly. As already ruled in the judgment of 21 December 2006, account must be taken of the possibility that HMET will not be able to defend itself adequately against this because of the high costs of legal assistance. In Dubai, it cannot be ruled out that attorneys will charge their clients a fee equal to a percentage of the amount claimed. That percentage can be as high as 20 per cent. For the rest as well, the interim relief judge concurs with his colleague, who concluded in the judgment of 21 December 2006 that the action in Dubai was brought solely for the purpose of making the other party's life as

131861 / KG ZA 07-44                                                                                                6
9 March 2007

---

miserable and difficult as possible. As the company and its management apparently do not shun such means, there is sufficient reason to prohibit PPI from activating the proceedings and to stimulate compliance with this prohibition by the company as well as the management. The claim under 3.1.3. will therefore be allowed, on the understanding that the incremental penalty claimed will be maximised as stated in the operative part.

5.6.     The claim under 3.1.1. is for the purpose, concisely stated, of prohibiting PPI BV and its officers to take measures that could result in revocation of the passports of Giezen and Van Aspert, or which could otherwise restrict their freedom of movement. It is evident from the exhibits submitted that, under the procedural law of Dubai, it is in principle possible that the civil court will revoke a defendant's passport at the request of a plaintiff. PPI has defended itself against this part of the claim by stating that it has not made such a request and does not intend to do so.

5.7.     Here, too, the mere fact that PPI BV brought the action in Dubai – solely, as stated above, for the purpose of making things as difficult as possible for the other party – is sufficient cause not to rule out that PPI and its officers would not hesitate to request measures to restrict Giezen's and Van Aspert's freedom of movement. The claim under 3.1.1 will therefore be allowed. Here as well, the incremental penalty will be maximised as stated below. PPI, as the party found against, will be ordered to pay the costs of the proceedings.

## 6.     The ruling in the counterclaim action

6.1.     In the counterclaim action, PPI claims lifting of the attachments levied and cessation of the enforcement of the incremental penalties determined in the judgment of 21 December 2006. It bases its claim on the fact that it has complied fully with the judgment, so that HMET is wrongfully claiming incremental penalties. HMET challenges this.

6.2.     It can be conceded to PPI that the instruction it sent to its attorney in Dubai is in line with the order. On the other hand, the situation is nevertheless that, although the case has been withdrawn, PPI still has a possibility to reactivate the proceedings within 60 days. No account could be taken of this possibility at the time the judgment was passed, as the relevant provisions of Dubai were not yet known at that time. Consequently, there can be different ideas on whether or not PPI has complied with the judgment.

6.3.     Against that background, the interim relief judge considers it advisable not to lift the attachments levied for the purpose of enforcing the periodic penalties, but to suspend the further enforcement of the judgment until the court in the proceedings on the merits has decided in a nonappealable and final judgment whether incremental penalties have been forfeited.

6.4.     In view of the counterclaim action, each of the parties will be ordered to pay its own legal costs.

## 7.     The decision

The interim relief judge

In the principal action

7.1.     prohibits PPI BV, Minter, Fisher, Hillman and Van der Meer, individually and jointly, from requesting, or having others request, the competent authorities of the United Arab Emirates, including the judicial authorities, to seize the passports of Giezen and Van Aspert,

131861 / KG ZA 07-44                                                              7
9 March 2007

---

7.2.    prohibits PPI BV, Minter, Fisher, Hillman and Van der Meer, individually or together with
one or more others, from performing acts that could result in revocation of the passports of Giezen and
Van Aspert, or could otherwise restrict the freedom of movement of Giezen and Van Aspert,

7.3.    rules that PPI BV, Minter, Fisher, Hillman and Van der Meer, shall forfeit an incremental
penalty of EUR 1,000,000 for each violation of the prohibitions under 7.1. and/or 7.2., subject to a
maximum of EUR 10,000,000,

7.4.    prohibits PPI BV, Minter, Fisher, Hillman and Van der Meer from bringing the action brought
by PPI BV under Suit Number 781/2006 before the Dubai Courts of First Instance against HMET Ltd.,
Power Plate Middle East, Giezen, Van Aspert and PPI, again, or otherwise reactivating it, until the
Haarlem District Court has decided on the liability of PPI BV towards HMET Ltd. in an action on the
merits of the case brought by HMET, in a nonappealable final judgment.

7.5.    rules that PPI BV, Minter, Fisher, Hillman and Van der Meer, shall forfeit an incremental
penalty of EUR 1,000,000 for each violation of the prohibitions under 7.4., subject to a maximum of
EUR 10,000,000,

7.6.    orders PPI BV, Minter, Fisher, Hillman and Van der Meer to pay the costs of the proceedings
until the pronouncement of this judgment in the principal action, assessed at EUR 609.64 in
disbursements and EUR 816 in fees of the local counsel,

7.7.    declares this judgment provisionally enforceable,

7.8.    dismisses any further applications,

<u>in the counterclaim action</u>

7.9.    suspends the enforcement of the incremental penalties determined in the judgment passed on
21 December 2006 between HMET Ltd., Giezen, Van Aspert and PPT on the one hand, and PPI BV
on the other in interim relief proceedings, until the court in the proceedings on the merits in a
nonappealable and final ruling, has decided whether or not incremental penalties have been forfeited
on the basis of that judgment,

7.10.    declares this judgment provisionally enforceable,

7.11.    orders each of the parties to pay its own costs of the counterclaim action,

7.12.    dismisses any further applications.

This judgment was passed by mr. Th.S. Röell and pronounced in open court on 9 March 2007.

(signature)                                              (signature)


(stamp of the Haarlem
District Court)                        ISSUED AS A TRUE BAILIFF'S COPY

                                       issued to *mr. M. Middeldorp*

                                       the Clerk of the Court (signature)

131861 / KG ZA 07-44
9 March 2007

8

Conc: 134