# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Application of Holland Middle East Trading Ltd. | ) | No. 08 CV 1344 |
| to Obtain Discovery For Use in a Suit Pending in the | ) ) ) | Hon. Ruben Castillo |
| Haarlem District Court of the Kingdom of the Netherlands. | ) ) | Magistrate Judge Martin C. Ashman |

**HOLLAND MIDDLE EAST TRADING LTD.'S OBJECTIONS AND RESPONSES TO
RESPONDENTS' SUBPOENAS AND FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS**

Applicant Holland Middle East Trading Ltd. ("HMET"), by its attorneys, submits

the following objections and responses to Respondents' subpoenas and First Request for

Production of Documents.    HMET makes a single response to the Respondents' four identical

requests for documents.

### GENERAL OBJECTIONS

1.    HMET objects to each document request to the extent that it seeks

production of information protected by the attorney-client privilege or work product doctrine.

2.    HMET objects to each document request to the extent that it seeks

production of information previously produced in the Netherlands litigation, or that will be

produced or filed with the court in the Netherlands.  *See* **Exhibits 1 and 2** attached to these

Objections and Responses.

3.    HMET objects to each document request to the extent that it seeks

production of information already in the possession custody or control of the Respondents or the

defendants in the litigation pending in the Netherlands.

4.    HMET objects to each document request to the extent that it is overly

broad, unduly burdensome, seeks information that is not described with sufficient particularity,

or seeks information that is neither relevant to the subject matter of the Dutch litigation or

reasonably calculated to lead to the discovery of admissible evidence.

        5.      HMET objects to each document request to the extent that it fails to

specify a time period for which the documents are requested.

**SPECIFIC RESPONSES**

**Request No. 1:**

> Any and all documents relating to the corporate and/or legal structure of each and every entity within the HMET Group, including, but not limited to, deeds and/or articles of incorporation; deeds and/or articles of association; business licenses; organizational charts; bylaws; Board of Directors resolutions and meeting minutes; submissions to any Chamber of Commerce or similar business organization, wherever located; and any and all documents relating to HMET's ability or inability to conduct any business outside of the "Jebel Ali Free Zone" in Dubai, United Arab Emirates.

**RESPONSE:**

        Subject to the general objections set forth above, HMET will produce responsive,

non-privileged documents. HMET has already produced the documents listed in Exhibit 1.

However, the fact that Power Plate Trading was partly owned by a UAE-domiciled person (a)

has never been stated as the basis for a claim, (b) does not bear on damages, and (c) has never

been cited by Power Plate as grounds for termination. Therefore, documents relating to that

topic are not reasonably calculated to lead to the discovery of admissible evidence in the Dutch

proceeding.

**Request No. 2:**

> Any and all documents relating to Giezen and van Aspert's identification, business, employment, and/or travel documents, including, but not limited to, passports, visas, work permits, residency cards, driver's licenses, business licenses, accreditations, business organization memberships, and business cards.

2

**RESPONSE:**

HMET objects to the production of documents pertaining to Giezen and van Aspert's identification. Request No. 2 seems purposely intrusive and oppressive, and appears to be intended to discourage HMET from attempting to collect evidence in this forum. None of the document requests are reasonably calculated to lead to the discovery of admissible evidence in the Dutch proceeding.

**Request No. 3:**

> Any and all documents relating to the business relationship between any and all HMET Group entities and PPI (including the origins, conduct, and termination thereof), including, but not limited to, internal and external communications within, between, among the HMET Group and PPI; HMET Board of Director resolutions and/or minutes; letter agreements; memoranda of understanding; letters of intent; contracts; and agreements in any form, including any and all drafts of the foregoing documents.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. HMET has already produced the documents listed in Exhibit 1. However, the Dutch defendants have raised no claims or defenses that can be supported or refuted by such documents, and therefore the request is not reasonably calculated to lead to the discovery of admissible evidence in the Dutch proceeding.

**Request No. 4:**

> Any and all documents relating to your removal, covering, or obscuring of any mark, label, plate, tag, or other indication, in whatever form it existed, that any particular piece(s) of Power Plate equipment had been manufactured in the People's Republic of China ("China"), including, but not limited to, any and all documents relating to (a) your contention that any particular piece(s) of Power Plate equipment had not, in fact, been manufactured in China; (b) your contention that PPI at any time authorized - directly or indirectly, explicitly or implicitly - your removal, covering, or obscuring of such markings; and (c) your contention that your removal, covering, or obscuring of such markings in no way negatively affected, or caused damage to, PPI.

3

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. HMET has already produced most of its responsive documents on this topic, and will produce others shortly. *See* Exhibit 1 and 2.

**Request No. 5:**

Any and all documents relating to your transfer, or attempted transfer, of any and all rights of distribution of Power Plate equipment under your written Licensee Agreements with PPI to any other person or entity, including, but not limited to (a) any communications, negotiations, dealings, and/or agreements in any form with (i) any and all "sub-distributors" and/or "representatives" in any country, (ii) Power Plate Trading, LLC, (iii) Mohamad Ali Rashid Suwailem Ajtabi, (iv) any person or entity within the nation of Lebanon, (v) HSBC Bank Middle East, (vi) the Landmark Group, (vii) Punj Lloyd, (viii) Sam International General Trading LLC, (ix) the Republic of Iran, and (x) any and all internet search engine entities and/or websites; and (b) your contention that PPI at any time authorized - directly or indirectly, explicitly or implicitly - any such transfer or attempted transfer of your Power Plate equipment distribution rights under the written Distribution Agreement(s) between you and PPI.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. Most of the documents that exist have already been produced in the Dutch proceedings, and the remaining documents will be submitted in that proceeding shortly. *See* Exhibits 1 and 2.

**Request No. 6:**

Any and all documents relating to the countries in which, you contend, you were authorized by the written Distribution Agreement(s) between HMET and PPI to distribute Power Plate equipment, including, but not limited to, documents relating to the following: (a) your contention that you were authorized to distribute Power Plate equipment in Bangladesh, Eritrea, Ethiopia, India, Iraq, Kenya, Libya, Morocco, Nepal, Pakistan, Sri Lanka, Sudan, Tunisia, and Zanzibar, as stated in your website; (b) your contention that you had an "exclusive contract for the whole Middle East, Africa - except South Africa - and India" with PPI for the distribution of Power Plate equipment, as set forth in Exhibit 13 to

4

PPI's Plea Notes of 19 December 2006; (c) your contention that you were authorized to distribute Power Plate equipment "in all Islamic countries;" (d) your contention that PPI had no exclusive distributors in Morocco and Tunisia prior to the time you attempted to obtain those distributorships; (e) your contention that PPI at any time authorized you - directly or indirectly, explicitly or implicitly - to obtain or to exercise any exclusive distributorship in any of the foregoing countries, including documents relating to any communications between you, on the one hand, and Mascha van der Meer and/or Birgit Radszat, on the other; (f) any and all "leads" that, you contend, PPI provided to you with respect to the distribution of Power Plate equipment outside of the countries expressly covered by your written Distribution Agreement(s) with PPI; and (g) your creation and operation of a website with the URL www.poweplateme.com.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. Most of the documents are in the Dutch defendants' possession, as they have already been submitted in the Dutch proceeding. The remainder will be submitted in that proceeding shortly. *See* Exhibits 1 and 2.

**Request No. 7:**

Any and all documents relating to communications, negotiations, and/or agreements, in whatever form, between you and (a) any and all actual and/or potential competitors of PPI, and (b) any and all customers or clients of PPI located and/or residing in countries in which you were not expressly authorized to distribute Power Plate equipment under the Licensee Agreements, including, but not limited to, Virgin Active, Virgin Atlantic, and Madonna.

**RESPONSE:**

HMET objects to the vague phrase "potential competitors," and lacks the knowledge to define who PPI's actual and potential competitors could be. HMET was authorized to distribute equipment in all countries in which it sold equipment, and defendants do not claim in the Dutch suit that their termination was based on events pertaining to any of the entities referred to in this request. Nonetheless, subject to these objections, and the general objections set forth above, HMET will produce responsive, non-privileged documents.

**Request No. 8:**

> Any and all documents relating to any and all claims and/or contentions that you have made, submitted, or asserted in the Foreign Litigation, including, but not limited to, those relating to PPI's alleged breach of the Licensee Agreements, as well as any and all documents relating to any communications with any person regarding Respondents, PPI, and/or the Foreign Litigation.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive, non-privileged documents. However, these documents either have been or will be produced shortly in the Dutch court. *See* Exhibits 1 and 2.

**Request No. 9:**

> Any and all documents relating to communications internal to Power Plate, including communications between and/or among any Power Plate directors, officers, employees, agents, representatives, distributors, and/or in-house or outside counsel.

**RESPONSE:**

As noted above in the general objections, HMET objects to producing documents explicitly already in the possession and control of the Respondents or the Dutch defendants.

**Request No. 10:**

> Any and all documents relating to your assets, income, expenses, and debts, including, but not limited to, income tax returns, employment agreements, employment termination letters, payroll statements, paychecks, distributions, shareholder agreements, stock holdings, stock options, restricted shares, returns of capital, capital appreciation, interest income, bank statements, loan statements, books and records, balance sheets, income statements, profit and loss statements, cash flow analyses, net worth analyses, financial statements (audited and/or unaudited), sales figures, marketing expenses, real estate closing documents, real estate assessments and/or valuations, business valuations, bankruptcy petitions, liens, attachments, and legal claims and/or judgments against you.

**RESPONSE:**

HMET objects to this request, which appears to call for the production of all documents pertaining to every aspect of HMET's financial affairs. Request No. 10 is overly

intrusive and oppressive, and seems calculated to discourage HMET from attempting to gather

evidence in this district.    The Dutch defendants have made no monetary claims against HMET,

and no judgments have been rendered against it.  Therefore this information is neither relevant

nor reasonably calculated to lead to the discovery of admissible evidence in the Dutch

proceeding.

**Request No. 11:**

> Any and all documents relating to your contention that you have suffered any
> financial loss or damage as a result of any alleged wrongdoing on the part of any
> defendant in the Foreign Litigation, including, but not limited to, documents
> relating to the following: (a) your contention that you are entitled to 22 million
> Euros in damages as a result of PPI's alleged breach of your written Distribution
> Agreement(s) with PPI; (b) your contention that HMET controlled 19% of world-
> wide Power Plate sales (exclusive of the United States and the Netherlands)
> immediately prior to the termination of the operative written Distribution
> Agreement; (c) your contention that you have suffered any financial loss or
> damage as a result of PPI's sales of any of its patent rights to any other person or
> entity; (d) your contention that you have suffered any financial loss or damage
> with respect to your ownership and/or operation of a fitness center in Dubai,
> U.A.E. (the Power Plate Center); (e) your contention that you incurred marketing
> costs related to your attempts to establish distributorships in countries not
> explicitly set forth in the Licensee Agreements; (f) your 30 September 2006 offer
> to sell your interests in HMET to PPI for a figure seven (7) times your claimed
> annual net profit from the operation of HMET; (g) sales projections for HMET;
> (h) forward-looking business plans, projections, pro formas, and/or other
> estimates of your anticipated future financial performance with respect to your
> distribution of Power Plate equipment; (i) any and all expert analyses and/or
> valuations of your claimed financial losses or damages; and (j) any and all lay or
> expert analyses of the opinions rendered by PricewaterhouseCoopers and by
> Deloitte & Touche in the Foreign Litigation with respect to your claimed damages
> in that Litigation.

**RESPONSE:**

Subject to the general objections set forth above, HMET will produce responsive,

non-privileged documents in the Dutch court.  HMET has already produced many documents

responsive to this request during the Dutch proceedings.  *See* Exhibit 1.  Expert reports and

analyses will be completed on or about June 18, 2008, and will be tendered to the Dutch

defendants at that time.

**Request No. 12:**

>    Any and all documents relating to any and all policies of insurance that you
>    carried on any of the HMET Group entities, including, but not limited to,
>    insurance policies, amendments, and riders; insurance claims; tender letters;
>    coverage letters; insurance payments; and/or reimbursements,
>    indemnifications, and/or subrogations.

**RESPONSE:**

>    HMET objects to the production of documents pertaining to all policies of

insurance, which do not appear to be related to any claim or defense in the Dutch suit. Request

No. 12 seems to be intended to discourage HMET from seeking evidence in this district. The

Dutch defendants have made no monetary claims against HMET, and no judgments have been

rendered against it. Therefore this information is neither relevant, nor reasonably calculated to

lead to the discovery of admissible evidence in the Dutch proceeding.

Dated: April 21, 2008

_____
One of the Attorneys for Applicant Holland Middle
East Trading Ltd.

Peter V. Baugher (ARDC#013282)
Lindsay Wilson Gowin (ARDC#6284270)
Schopf & Weiss LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

8

## CERTIFICATE OF SERVICE

I, Lindsay Wilson Gowin, an attorney, hereby certify that I caused a copy of the

foregoing to be served by via regular post delivery and e-mail on this 21st day of April, 2008

upon the following individuals:

> Scott A. Meyers
> Kurt Stitcher
> David W. Porteous
> Amy A. Pines
> Levenfeld Pearlstein, LLC
> 2 North LaSalle Street, Suite 1300
> Chicago, Illinois 60602
> Facsimile: 312.346.8434

Lindsay Wilson Gowin

# EXHIBIT 1

**Exhibit 1**

**Documents HMET Has Already Produced in the Dutch Action
and the Request to Which They Correspond**

Request No. 1:
- Yearly accounts for the period 30 September 2004 – 30 September 2005 of HMET
- Annual accounts of HMET 2005/2006 including the turn over of the Power Plate Center
- Refurnishing costs of the Power Plate Center
- Inventory costs of the Power Plate Center
- Report in which the specific damages are set out

Request No. 2: HMET objects to this request in its entirety

Request No. 3:
- Licensee Agreement of 20 September 2004
- Licensee Agreement of 1 June 2005
- E-mail of 28 October 2005 of Mirjam Aalbers to HMET
- E-mail of 19 December 2005 of Aalbers to Van Aspert
- E-mails of 9 and 10 September 2006 between Minter and Giezen
- E-mails of 19 June and 15 July 2006 of Mark Minter to Frans Giezen
- Several e-mails in which the directors in various orders are copied in (cc)
- A copy of the draft of the new agreement between PPI UK and HMET
- Purchase invoices
- Sales invoices

Request No. 4:
- E-mail of 29 March 2005 of Giezen to Chris de Groot of PPI
- Commercial Invoice of 4 July 2006
- E-mail of John Wilson of 7 December 2005
- "Certificate of Origin", in which PPI itself declares that the Power Plates, shipped to HMET with the vessel "CMA CGM Othello" originate from "The Netherlands"

Request No. 5:
- E-mails from which it appears that PPI already has known about that HMET appointed sub distributors in her territory to be able to sell Power Plates
- E-mail of 19 April 2006 of Minter to Elias Gannage
- E-mail of 5 April 2005 of Van Aspert to Mirjam Aalbers and the draft for a contract with a sub-distributor to be appointed by HMET in Saudi-Arabia
- E-mail correspondence of 11-16 April 2006 between Giezen and Minter
- E-mail of 27 March 2006 of Giezen to Minter

- E-mail of 27 March 2006 of claimant to PPI
- E-mail of 19 December 2005 of Aalbers to Van Aspert
- Agreement with HSBC
- Correspondence with the Iranian sub distributor about the Iran contract
- Letter of SAM International General Trading LLC
- E-mail of 10 December 2006 of V. Santosh Kumar
- Information relating to the Landmark Group
- E-mails of 11 March 2007 of Deepak Srivastava

Request No. 6:
- Photo of the website www.hollandenterprisesgroup.com
- E-mail correspondence of 28 and 29 July 2005 between Mascha van der Meer and Giezen and Van Aspert
- E-mail of 13 October 2005 of HMET to Birgit Radszat
- "Leads" sent through by PPI to HMET
- Several e-mails in which the directors in various orders are copied in (cc)

Request No. 7:
- E-mail of 23 September 2006 of Van Aspert to Rob Vliek

Request No. 10: HMET objects to this request in its entirety.

Request No. 11:
- Faxcopy of 2 January 2007 from counsel for claimants to Mrs. L. Meulman with attachment
- E-mail of 28 October 2005 of Mirjam Aalbers to HMET
- Yearly accounts for the period 30 September 2004 – 30 September 2005 of HMET
- Purchase invoices
- Sales invoices
- Agreement with HSBC
- Letter of SAM International General Trading LLC
- E-mail of 10 December 2006 of V. Santosh Kumar
- Information relating to the Landmark Group
- E-mails of 11 March 2007 of Deepak Srivastava
- Annual accounts of HMET 2005/2006 including the turn over of the Power Plate Center
- Refurnishing costs of the Power Plate Center
- Inventory costs of the Power Plate Center
- Report in which the specific damages are set out

Request No. 12: HMET objects to this request in its entirety

# EXHIBIT 2

**Exhibit 2**

**<u>Additional Documents HMET Will Produce</u>**

1.    Corporate documents

2.    E-mails relating to Virgin Atlantic and Madonna

3.    Documents relating to sub-distributors

4.    Invoices

5.    Receipts

6.    Proof of payment

7.    Marketing efforts and leads

8.    Expert report from damages expert

9.    Dubai export and import documents