**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re Application of Holland Middle East Trading Ltd. to Obtain Discovery for Use in a Suit Pending in the Haarlem District Court of the Kingdom of the Netherlands | ) | Case No. 08-CV-1344<br>Hon. Ruben Castillo<br>Magistrate Judge Martin C. Ashman |

**RESPONDENTS' OPPOSITION TO HMET'S "OBJECTIONS TO DISCOVERY REQUESTS AND REQUEST FOR THE COURT'S ASSISTANCE"**

Pursuant to Federal Rule of Civil Procedure 26 and to the Local Rules of this Court, Respondents respectfully request that the Court *deny* HMET's "Objections to Discovery Requests and Request for the Court's Assistance," *strike* this ill-advised pleading from the record, and *grant* Respondents their costs and fees incurred in responding hereto.

As a preliminary matter, HMET's mislabeled "request" is in direct violation of Rule 26(c)(1), Local Rule 37.2, and this Court's own rules, all of which require that, prior to any motion to compel or motion for a protective order, a party certify that it has met and conferred with its adversary in an attempt to resolve any disputes. HMET did not, because it could not, file such a certification, as it never even *attempted* to confer with Respondents either about Respondents' discovery requests or about Respondents' objections to HMET's discovery requests. Thus, the applicable rules *mandate* a peremptory denial of HMET's motion.

Furthermore, even if the Court were to countenance HMET's violation of these rules, HMET's motion is procedurally, factually, and legally without any merit whatsoever. ***First***, HMET's motion both glosses over HMET's own failure to comply with relevant procedural rules and mischaracterizes this Court's prior orders regarding discovery. Both of these ineluctable facts compel the denial of HMET's motion.

***Second***, HMET's "motion for protective order" is rife with misstatements of law and fact, many of which are readily disproved by HMET's own words in this proceeding, while others simply lack any support in the record, as evidenced most dramatically by HMET's failure to file an affidavit corroborating its principals' claims of poor health and poverty.

***Third***, HMET's "motion to compel" suffers from the same shortcomings and, in the end, presents nothing but a thinly disguised effort to deny Respondents any of the ***reciprocal*** discovery that this Court authorized in its April 3, 2008 Order.

In sum, HMET's motion is unauthorized and without any procedural, factual, or legal merit. The Court should deny it, strike it from the record, and impose sanctions on HMET and its counsel for filing it.

## FACTUAL BACKGROUND

### Proceedings in the Netherlands[1]

In December of 2006, HMET (a British Virgin Islands legal entity established in Dubai, United Arab Emirates) and its two principals (Giezen and van Aspert) (collectively, "Plaintiffs") commenced "summary proceedings" against Power Plate International B.V. (a limited liability Dutch company) (hereinafter "PPI") in the Haarlem District Court, Haarlem, Kingdom of the Netherlands. In their complaint, Plaintiffs alleged that PPI had wrongfully terminated their exclusive license to distribute Power Plate exercise equipment in certain Middle Eastern countries. Plaintiffs later expanded the proceedings by naming as defendants other Dutch entities, as well as certain directors of PPI, including Respondents Mark Minter and Lee Hillman.

[1] Respondents have already described HMET's conduct in the Dutch proceedings in detail in their Motion for Reconsideration (Docket Entry No. 21, at 2-4 & 8) and will not repeat such detail here.

As set forth in detail in Respondents' Motion for Reconsideration, the independent courts of the sovereign Dutch nation have jurisdiction over all parties appearing before them, including the power to compel compliance with evidence-gathering rules. Although Dutch law provides for the exchange of documents and testimony between adverse parties to a Dutch proceeding, Plaintiffs ***never*** requested ***any*** such discovery from Respondents in the Netherlands.

**Proceedings in the United States**

**1. HMET's Application for Discovery**

Instead, on March 5, 2008, HMET filed its "Application of Holland Middle East Trading Ltd. To Obtain Discovery For Use In A Foreign Suite [sic] Pursuant To 28 U.S.C. §1782." Attached as "exhibits" to HMET's Application were three Rule 45 subpoena forms, which purported to command Respondents to produce documents on March 25, 2008, and to give testimony on April 7, 8, and 9, 2008. Contrary to Rule 45, however, HMET's counsel did not sign any of the "Application exhibit subpoenas," nor, when they served the Application on Respondents on March 6 and 7, 2008, did counsel ***tender witness fees and mileage*** to the individual Respondents.

**2. The Court's March 17, 2008, Order**

On March 17, prior to the presentment of HMET's Application, the Court entered an Order granting it[2]. By its express terms, the Court's March 17 Order did nothing more than ***authorize*** HMET to serve discovery on Respondents, which HMET had requested under the auspices of the Federal Rules of Civil Procedure. *See* Application at 7 (noting that Respondents "must be subpoenaed" and requesting permission "to take discovery . . . in accordance with the

[2] The Court's Order stated: "After careful review of all the materials filed in this lawsuit, the Court hereby grants the Application of Holland Middle East Trading Ltd. to obtain discovery for use in its pending foreign litigation pursuant to 28 U.S.C. § 1782. Judgment is therefore entered in favor of the Applicant Holland Middle East Trading Ltd. The Court will retain jurisdiction to enforce this order and ***to rule on any objections to the discovery authorized herein.***" Minute Entry of March 17, 2008 (Docket Entry No. 9) (emphasis added).

Federal Rules of Civil Procedure"). In no way did the Court's Order even consider, much less validate, HMET's "Application exhibit subpoenas," which, as noted above, HMET had failed to serve in accordance with Rule 45.

**3. HMET's Initial Acknowledgement of Defective Service**

On March 20, Respondents' counsel spoke with HMET's U.S. counsel regarding the March 17 Order. During this conversation, Respondents' counsel noted that HMET had failed to serve valid subpoenas on Respondents (as the Court had authorized), because the "Application exhibit subpoenas" were (a) unsigned, (b) served without tender of fees and mileage, and (c) not yet authorized to be served at the time they were actually served. HMET's counsel responded simply that he was in possession of ***signed*** subpoenas with ***executed*** returns of service.

When Respondents' counsel requested copies of these alleged subpoenas, HMET's counsel emailed ***new, signed*** subpoenas, with new return dates, to Respondents' counsel. At no time prior to emailing these new subpoenas to Respondents' counsel, however, did HMET's counsel ever ask for permission (oral or written) to do so, nor did he ask whether counsel was authorized to accept service on behalf of his clients.

**4. The Court's April 3, 2008, Order**

On April 3, the parties appeared before this Court for a hearing on Respondents' Motion for Reconsideration with respect to the March 17 Order. At the hearing, the Court ***granted*** Respondents' alternative request for reciprocal discovery of HMET and its principals. When Respondents' counsel began to explain to the Court that HMET had, as of yet, failed to serve any valid subpoenas on Respondents, the Court expressed its certainty that HMET's counsel would remedy the defects in the subpoenas. *See* Transcript of Proceedings for April 3, 2008, at 8:15-25

(Docket Entry No. 24). The Court then ordered Respondents to comply with its March 17 Order on or before April 11, 2008.[3].

Because the March 17 Order merely authorized HMET to ***serve*** discovery on Respondents, however, the April 3 Order was, in reality, a directive to ***HMET*** that it serve valid subpoenas on Respondents and, arguably, a directive to Respondents that they serve written responses to these new subpoenas by April 11. In other words, because the Court's March 17 Order did not require Respondents to produce any documents, or to provide any testimony, except pursuant to a subsequent, valid subpoena, the April 17 Order confirming the March 17 Order could not have done so, either.

**5. HMET's Subsequent Acknowledgement of Defective Service**

On April 10, in recognition of the Court's oral directive, and of the plain language of the April 3 Order, HMET mailed a letter to Respondents' counsel, enclosing witness fee and mileage checks for Respondents' depositions. At no time prior to mailing these checks, however, did HMET's counsel ever ask for permission (oral or written) to do so, nor did counsel ask whether Respondents' counsel was authorized to accept service on behalf of his clients. To date, Respondents have not authorized their counsel to accept service on their behalf.

**6. Post-Hearing Proceedings**

Despite HMET's failure to comply with the Court's April 3 Order to effect service of valid subpoenas, Respondents did ***not*** simply sit back and await such compliance. Instead, in a good faith effort to move this proceeding forward, and in compliance with the Court's Order regarding ***reciprocal*** discovery, Respondents undertook three inter-related tasks.

[3] The Court's Order stated: "Respondent's alternative ***request for reciprocal discovery is granted***. The Court will allow reciprocal discovery from HMET and its principals by 4/14/2008. Any objections will be due by 4/21/08. The Court orders full compliance with its 3/17/2008 order by 4/11/2008." Minute Entry of April 3, 2008 (Docket Entry No. 23).

***First***, the day after the hearing, Respondents served Rule 30 Notices for the depositions of Giezen and van Aspert, with deposition dates of April 16 and 17 in Amsterdam. Respondents then completed their service of reciprocal discovery on April 14, with the hand-delivery of document requests and deposition notices – in both "notice" form *and* Rule 45 subpoena form – to HMET's U.S. counsel. Until HMET filed its misnamed "Request for Assistance" on April 21, HMET's counsel had not responded in any way, shape, or form to ***any*** of Respondents' discovery requests. This failure to respond caused counsel to postpone the noticed deposition dates.

***Second***, on April 11, Respondents served objections and responses to all of HMET's invalid subpoenas, including both document requests and deposition notices. That same day, Respondents also produced certain hard copy documents, along with a statement that they would produce additional responsive documents – both hard copy and electronic – on a "rolling" basis. Until HMET filed its misnamed "Request for Assistance" on April 21, HMET's counsel had ***never*** objected to such a rolling production.

***Third***, and perhaps most distressingly, Respondents embarked on a concerted, and ultimately fruitless, effort to obtain HMET's cooperation in the Court-ordered reciprocal discovery process. To date, this effort has encompassed multiple voicemails, emails, and letters, ***all of which HMET's U.S. counsel have completely ignored***. (Copies of emails and letters attached as "Group Exhibit A"). Indeed, despite their best efforts, Respondents' counsel could not even elicit from HMET's counsel a statement as to whether counsel would accept service on behalf of their individual, Netherlands-based clients. In short, until HMET filed its misnamed "Request for Assistance" on April 21, HMET's counsel had never suggested that their clients would defy the Court and decline to participate in reciprocal discovery.

## ARGUMENT

### I. THE COURT MUST DENY HMET'S MOTION AS A VIOLATION OF APPLICABLE RULES OF PROCEDURE.

Rule 26(c)(1) of the Federal Rules of Civil Procedure requires any party seeking a protective order to certify that it has met and conferred with its adversary in a good faith effort to resolve the dispute without resort to the courts. *See* Fed. R. Civ. P. 26(c)(1). Likewise, Local Rule 37.2 provides that the courts of this District will ***not*** entertain motions to compel, unless the moving party certifies that it has made documented, good faith efforts to meet personally with the other party to resolve any discovery issues ***before*** it filed its motion. *See* N.D. Ill. L.R. 37.2; *see also Tax Track Systems Corp. v. New Investor World, Inc.*, No. 01 C 6217, 2002 WL 31473818, at *7, n. 6 (N.D. Ill. Nov.4, 2002) (holding that "Local Rule 37.2 requires personal consultation[; a]n exchange of letters does not constitute compliance"). Finally, the rules of this Court state emphatically that this Court will ***deny*** discovery motions where the moving party fails to engage in the required meet-and-confer with the responding party. *See* Hon. Ruben Castillo, Case Management Procedures, "Motion Practice."[4]

In this case, HMET ***never*** met and conferred with Respondents or their counsel regarding ***either*** Respondents' objections and responses to HMET's discovery (served 12 days ago) ***or*** Respondents' discovery to HMET (served 9 days ago). In fact, as explained above, HMET's U.S. counsel simply went into "radio silence" and steadfastly refused to respond to any of Respondents' efforts – through wire, post, or cyberspace – to comply with this Court's direct order that the parties engage in ***reciprocal*** discovery in this proceeding. If HMET had a problem

---

[4] This Court's rule states that "[p]rior to filing any motion to compel, to dismiss, or for summary judgment, the moving party shall first serve the nonmoving party with a concise letter summarizing the legal and factual grounds for the motion, with references to supporting authorities, and make a sincere effort to resolve issues relating to the motion. ***Any filed motion must contain a statement of compliance with this rule or the motion will automatically be denied without prejudice***." *Id*. (emphasis added).

with Respondents' document production, the applicable rules required HMET to raise those issues with Respondents, not with the Court through a "request for assistance."

Based on the unambiguous rules set forth above, including this Court's own rules, the Court must dismiss this ill-advised filing as unauthorized. *See Ridge Chrysler Jeep LLC v. Daimler Chrysler Servs. North Am.*, No. 03 C 760, 2004 WL 3021842, at * 4 (N.D. Ill. Dec. 30, 2004) (denying motion to compel where moving party failed to comply with L.R. 37.2, to meet and confer, or to provide certificate as to its efforts in this regard).

## II. HMET'S MISREPRESENTATION OF THIS COURT'S ORDERS DEFEATS ITS MOTION TO COMPEL.

Although HMET disingenuously labels part of its motion a "request for assistance," it is unequivocally a motion to compel. Unfortunately for HMET, a motion to compel requires not only a pre-filing conference and certification of same (*see* above), but also valid discovery requests (coupled with a ***refusal*** to produce information) and/or a court order that the non-moving party is disobeying. *See* Fed. R. Civ. P. 37(a)(2)(A). In this case, HMET cannot fulfill either of these conditions precedent.

***First***, as the Factual Background section makes clear, HMET failed to serve valid Rule 45 subpoenas on Respondents. Despite acknowledging in its Application that subpoenas are required, and despite subjecting its discovery requests to the Federal Rules of Civil Procedure in that same Application, HMET ***never*** served upon any individual or corporate Respondent a subpoena that complies with Rule 45's requirements, including: (a) personal delivery; (b) a signed subpoena; (c) personal tender of witness fees and mileage; and (d) an executed return of service. *See* Fed. R. Civ. P. 45.

Moreover, HMET tacitly admitted the invalidity of its subpoenas by attempting to salvage them retroactively. Unfortunately for HMET, ***emailing*** subpoenas to ***counsel*** does ***not***

comply with the service requirements of Rule 45 (even if Rule 5 were deemed to modify them), nor does tendering witness fees and mileage to counsel long after the invalid service of the underlying subpoenas, especially where counsel was not authorized to accept service and where HMET failed even to inquire as to such authorization.

***Second***, the Court's two Orders did ***not*** impose upon Respondents any obligation to produce every responsive document by April 11. Setting aside the fact that these two Orders, read in conjunction, merely authorized (or required) HMET to ***serve*** valid discovery upon Respondents, the Court, in its March 17 Order, explicitly retained jurisdiction to rule on any ***objections*** to discovery. Thus, even if we read the Court's April 3 Order to require Respondents to respond to HMET's invalid subpoenas by April 11, the Court previously acknowledged in its March 17th Order Respondents' procedural rights to respond with objections so that its April 3rd Order, which merely confirmed its previous Order, cannot be read to have preempted all of Respondents' possible objections by prospectively ordering production of all responsive documents. Nor could the Court have intended to give Respondents only six (6) business days to produce electronic data that might run into the multi-gigabyte range.

In the final analysis, it is the parties' different approaches to this Court's Orders and rules that is most striking. Respondents, acting in a good faith effort to move this process forward, have (a) served all discovery in a timely fashion, (b) responded to all discovery in a timely fashion, and (c) produced responsive documents, with a pledge to produce more as they become available. HMET, on the other hand, has (a) failed to serve valid discovery, (b) refused to acknowledge any of Respondents' efforts to engage in reciprocal discovery, and (c) violated all applicable procedural rules by filing a set of "objections to discovery requests," which state, in essence, that HMET will not subject itself to Court-ordered reciprocal discovery.

## III. HMET'S "OBJECTIONS TO DISCOVERY REQUESTS" ARE WITHOUT ANY FACTUAL OR LEGAL BASIS.

In the first section of its motion, HMET asks the Court to enter a protective order that coincides with its objections to Respondents' discovery requests (which Respondents did not see until HMET filed the instant motion). The request lacks any factual basis, legal merit, or logic.

***First***, HMET asserts that its invalid discovery requests were narrowly tailored to address issues of "damages" and the "liability of [PPI] directors." Motion at 1. This assertion is belied by HMET's own filings ***in this proceeding***. For example, in its Application, HMET states that it is requesting "documents and information relevant to the decision to terminate the Applicant's license to distribute Power Plate vibration machines in the Middle East." App. at ¶8. Likewise, in its Response to Respondents' Motion for Reconsideration, HMET states that it seeks information relevant to the reasons PPI terminated it as a Power Plate distributor. Resp. at 6. Both of these issues are quintessential ***liability*** issues with respect to ***PPI***. Nowhere in HMET's requests is there ***any*** limitation to questions of damages and director-only liability.

***Second***, HMET contends that Respondents' document requests are much broader than are HMET's and that Respondents designed these requests to inflict costs on HMET's principals. Motion at 1. As to the former contention, Respondents would merely note that HMET has filed minimal objections to their requests and has pointed to only three requests that it believes are irrelevant (Nos. 2, 10, and 12).[5] As to the latter contention, this is pure hypocrisy. HMET and its principals have battled PPI on three different continents, and it was ***they*** who chose to come to

[5] All of these Requests are relevant. No. 2 addresses the principals' business travels to countries outside of their distribution area, their ability to live and work in locations other than Dubai, and their claim that they had to "flee" the country after PPI terminated their distributorship for cause. No. 10 seeks financial information directly relevant to HMET's claim that PPI destroyed its business and caused its principals financial hardship. No. 12 relates to possible insurance set-offs that could reduce HMET's claimed damages. Likewise, HMET's claim that Respondents' requests have no temporal limitation is false, as the requests all specify the identical time period, *i.e.*, January 1, 2003, onward. As to HMET's claim that the requests contain no geographical limitation, the Federal Rules of Civil Procedure should provide all of the guidance ("possession, custody, or control") necessary.

America seeking discovery, despite the fact that they had ***never*** sought it in the Netherlands. Moreover, the purportedly impoverished principals are paying experienced counsel and experts in the Dutch litigation, Schopf & Weiss in this proceeding, and Jones Day in the UK action. And they have not hesitated to impose costs on PPI and its directors, including a $1.1 million Euro "preliminary judgment" that is funding this litigation against PPI. Thus, it would appear that HMET's claims of penury are exaggerated.

***Third***, HMET wanders off of the FRCP reservation when it claims that it has already produced documents in the Dutch proceeding and that, at some point in the future, it will produce more.[6] *See* Motion at 2. What HMET fails to mention is that the documents it purportedly produced were cherry-picked documents that it attached to its pleadings ***in support of its own litigation positions***. As the Court can well imagine, discovery would easier if each party could produce only that which supported its case. But that is not what the Federal Rules provide, it is not what Respondents seek, and for HMET to ask this Court to deny Respondents' legitimate requests simply because HMET attached a few favorable documents to its Dutch pleadings is an affront to our Rules and to this Court's Order regarding reciprocal discovery.

Moreover, when the Court granted Respondents' alternative request for reciprocal discovery, the Court ***already knew*** about those HMET exhibits, because HMET's counsel ***told*** the Court about them at the April 3 hearing. *See* 4/3/08 Transcript at 4:20-23. Thus, the Court clearly contemplated that Respondents could seek, and obtain, documents beyond those that HMET chose, for its own purposes, to disclose in the Dutch proceedings.

---

[6] HMET's inclusion of Exhibit 2 (the future documents) is troubling for two reasons. First, the listed documents appear to belong to PPI, Minter, and/or Hillman, thus raising serious questions of how HMET obtained these internal materials. Second, while HMET objects in its Responses to providing Respondents with documents they already have, these internal documents would certainly fall into that category.

***Fourth***, HMET proclaims that it seeks the depositions of Messrs. Hillman and Minter solely to ensure that their document production is complete. *See* Motion at 2. Respondents, however, cannot seem to find any such limitation anywhere in HMET's invalid subpoenas or in ***any other filing*** HMET has put before this Court. Nor, once again, does HMET see fit to submit an affidavit to support this assertion. If, however, HMET truly seeks only such assurances, Respondents would be happy to provide an affidavit to that effect, thus obviating the need for any depositions at all.

***Fifth***, all of the foregoing arguments may be moot in any event, because HMET goes on to proclaim that it will defy this Court's Order regarding reciprocal discovery and will refuse to produce its principals for the exact same kind of deposition that HMET seeks from Respondents. *See* Motion at 2 (stating that Giezen and van Aspert will not appear for FRCP depositions but will submit only to court-supervised questioning in the Dutch proceeding). HMET justifies this defiance by asserting – without a shred of evidence – that the termination of HMET's distributorship has left the principals too ill to submit to examination by U.S. lawyers. Unfortunately for HMET, this is what it signed up for by initiating this proceeding in which HMET specifically requested depositions and documents pursuant to the Federal Rules of Civil Procedure, and that is what the Court ordered: discovery conducted pursuant to the Federal Rules of Civil Procedure and under the jurisdiction of ***this Court***.

This defiance points up the need for the Court to enter a scheduling order consistent with Respondents' request that HMET and its principals submit to depositions before Respondents do. If Respondents (who are located here) go first, then HMET refuses to appear, the Court has no power to enforce any sanction against HMET and its principals (who are non-U.S. residents).

HMET knows this, and, in light of its refusal to engage in ***reciprocal*** oral discovery, it will clearly decline to submit to depositions, once it has deposed Respondents.

Similarly, HMET's defiance completely undermines its suggestion that Respondents should rely on Dutch procedures to obtain their requested discovery. *See* Motion at 3. How ironic. Now that this Court has followed Supreme Court precedent and imposed a reciprocal discovery obligation on HMET, HMET suddenly longs for the comfort of the Dutch proceedings, whose discovery provisions are apparently good enough for Respondents, but not good enough for HMET.

**IV. HMET'S "REQUEST FOR ASSISTANCE" IS WITHOUT ANY FACTUAL OR LEGAL BASIS.**

Almost as an afterthought, HMET "requests" the Court's "assistance" in obtaining from Respondents discovery it never served. But even setting aside HMET's failure to serve valid discovery and its misreading of the Court's Orders, HMET's request for help rings hollow.

***First***, HMET complains that Respondents have not yet produced certain types of documents. *See* Motion at 4. There are two salient problems with this observation. To begin with, Respondents are producing documents on a rolling basis, and they have already made three separate productions within a week totaling nearly 700 pages. As such, HMET is in no position to claim that Respondents will ultimately fail to produce such documents.

In addition, as HMET pointed out in its Response to the Motion for Reconsideration, if Respondents do not ***possess*** certain documents, they can have no obligation to ***produce*** them. *See* Resp. at 7. Even assuming, then, that Respondents never produce documents of this type, it would simply mean that Respondents did not possess such documents in this District, as §1782 and HMET's Application require.

***Second***, HMET revisits its argument about the sequence of depositions by, in effect, asking the Court to order Respondents to appear for depositions first. There is simply no reason in equity or logic for such an Order. To begin with, HMET has known for over a month that Respondents would insist on deposing HMET's principals before they would appear for depositions, yet it is raising the issue only now. And the timing is ironic, because HMET's Dutch counsel is requesting a six-week extension (to June 18) for HMET's Reply in the Dutch proceeding, thus effectively canceling the fire drill that HMET created when it waited until the last minute to request discovery before this Court.

HMET then complains that Respondents cannot legitimately condition their provision of discovery ***to*** HMET on their receipt of discovery ***from*** HMET. This assertion is odd for two reasons: (a) it suggests, again, that HMET will simply decline to provide discovery once it has obtained discovery from Respondents (otherwise, why hold out?); and (b) even if the statement were true, this Court certainly has the power to impose that condition, and, as explained above, such a condition makes perfect sense when dealing with recalcitrant foreign parties over whom this Court has no effective control.

Finally, HMET adverts that it only filed an Application here because it could not obtain discovery in the Netherlands. There is at least an element of truth to that claim. While we may never know ***what*** HMET could have obtained in the Netherlands – ***because it never asked*** for anything – Dutch law does not provide for American-style depositions, nor does it allow discovery from third parties (like Respondent PPNA). But all that is beside the point, because (a) defendants in the Dutch proceeding were operating under the same handicap, and (b) once HMET came to America, and this Court ordered reciprocal discovery, what's sauce for the goose is sauce for the gander. HMET simply cannot ask this Court to permit it to obtain discovery to

which it is not entitled in the Netherlands, then turn around and try to deny that same type of discovery to Respondents. That is precisely why the Supreme Court, in *Intel*, provided for ***reciprocal*** discovery.

## CONCLUSION

HMET's mislabeled "objections" and "requests" are not properly before this Court. By filing its motions without any consultation or certification, HMET has violated procedural "meet and confer" rules, which mandates a peremptory denial of the motion.

Even if the Court were to consider the motion, it is utterly without merit procedurally, factually, and legally. At base, HMET simply wants to deny Respondents the reciprocal discovery that this Court has already ordered, but in making its case, HMET has distorted the record, concocted facts, and advanced arguments that defy law and logic.

For all of these reasons, Respondents respectfully request that the Court *deny* HMET's "Objections to Discovery Requests and Request for the Court's Assistance," *strike* the pleading from the record of the case, and, because the motion was unauthorized under Federal, local, and court rules, *grant* Respondents an award of the attorneys' fees and costs that they incurred in responding to this misguided, meritless motion.

Respectfully submitted,

Date: April 22, 2008

By: /s/ David W. Porteous
Scott A. Meyers
Kurt Stitcher
David W. Porteous
Amy A. Pines
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
Phone: (312) 346-8380
Facsimile: (312) 346-8434
kstitcher@lplegal.com

*Attorneys for Respondents Lee S. Hillman, Mark C. Minter, and Power Plate North America*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2008, I caused a copy of the attached Respondents' Opposition to HMET's "Objections to Discovery Requests and Request for the Court's Assistance" to be served by email and hand delivery upon attorneys Peter V. Baugher and Lindsay Wilson Gowin of Schopf & Weiss LLP, One South Wacker Drive, 28th Floor, Chicago IL 60606.

By: /s/ David W. Porteous_______________

David W. Porteous
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
Phone: (312) 476-7542
Facsimile: (312) 346-8434
apines@lplegal.com

*Attorney for Respondents Lee Hillman, Mark Minter, and Power Plate North America*