IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Application of Holland Middle East Trading Ltd. to Obtain Discovery for Use in a Suit Pending in the Haarlem District Court of the Kingdom of the Netherlands | ) ) ) ) ) ) | Case No. 08-CV-1344<br><br>Hon. Ruben Castillo<br><br>Magistrate Judge Martin C. Ashman |

**RESPONDENTS' MOTION TO OBTAIN RECIPROCAL DISCOVERY**

Pursuant to 28 U.S.C. §1782 and to the prior orders of this Court, Respondents respectfully request that the Court order Applicant Holland Middle East Trading Ltd. (HMET) to produce documents and witnesses consistent with Respondents' First Request for Production of Documents and their three Notices of Deposition, previously served on HMET and its counsel.

The Court has already approved of reciprocal discovery in this matter. Although the Court temporarily suspended such discovery pending Respondents' production of documents and witnesses, Respondents produced all documents, and scheduled all depositions, by the Court's deadline of May 27, 2008. Thus, the time for HMET to produce *its* documents and witnesses has arrived.

HMET will undoubtedly balk at reciprocal discovery, as it has recently asserted that Respondents did not seek documents located outside of the United States and that, therefore, Respondents' document production is "incomplete." Respondents readily acknowledge that they have not searched for documents outside of the U.S., because neither 28 U.S.C. §1782 nor the applicable case law require any such thing. Respondents' production is thus complete, in accordance with the law and with this Court's directives.

In sum, there is no reason to delay Court-approved reciprocal discovery. Consequently, Respondents respectfully request that the Court order HMET to comply with its obligations

under the Federal Rules of Civil Procedure and to produce the requested documents and witnesses in a timely fashion.

## FACTUAL BACKGROUND

### The Court's Grant of Reciprocal Discovery from HMET

On March 5, 2008, HMET filed its "Application of Holland Middle East Trading Ltd. To Obtain Discovery For Use In A Foreign Suite [sic] Pursuant To 28 U.S.C. §1782." In its Application, HMET – in compliance with §1782 and the case law interpreting it – specifically requested discovery of materials "located within this judicial district." App. ¶9 (Docket Entry 1). *See also* App. ¶1 (requesting documents and depositions from "entities and persons within the Northern District of Illinois") and ¶10 (requesting "information and evidence located here in the Chicago area"). On March 17, prior to the presentment of HMET's Application, the Court entered an Order granting it.

On March 25, Respondents filed a Motion for Reconsideration, in which they asked the Court to deny HMET's Application or, in the alternative, to permit Respondents to take reciprocal discovery from HMET. In their motion, Respondents specifically objected to HMET's document requests on the ground that they could be read to require searches beyond the geographical scope of §1782. *See* Motion at 7 (Docket Entry 15). Respondents also requested that the Court order HMET to produce its witnesses for deposition before Respondents did so, on the grounds that the Court did not have personal jurisdiction over HMET's Netherlands-based principals and could not, therefore, enforce an order that the principals appear for deposition.[1]

On March 31, HMET filed an opposition to the motion, in which it reconfirmed the geographic scope of its document requests. *See* HMET's "Motion to Enforce Subpoenas and In

---

[1] This issue is especially critical to Respondents, because HMET's Dutch and U.S. counsel have both denied that they represent HMET's principals in this proceeding. As such, neither set of counsel can even represent to this Court that the principals will appear for any kind of deposition, anytime or anywhere.

Opposition to Motion for Reconsideration" at 2 (noting that the Application seeks evidence "located within [this] judicial district"), 3 (stating that the Application seeks "evidence . . . for records and from witnesses located in the United States"), 4 (asserting that HMET seeks "discovery within this Court's district . . . where the evidence is located"), and 8 (opining that §1782 permits HMET to "gather evidence in this district") (Docket Entry 21).

At the April 3 hearing on Respondents' motion, HMET reiterated its contention that discovery would impose no burden on Respondents when counsel represented to the Court that "what we're seeking is discovery *here in this judicial district*." Transcript of April 3, 2008, Hearing at 6:20-21 (emphasis added). At the conclusion of the hearing, the Court (a) granted Respondents' alternative request for reciprocal discovery of HMET and its principals; (b) instructed Respondents to serve such discovery by April 14; and (c) directed Respondents to answer HMET's discovery by April 11. The Court did not address the order in which depositions would occur.

### The Court's Stay of Reciprocal Discovery

Immediately following the April 3 hearing, and in compliance with the Court's directive, Respondents served upon HMET and its principals – via both Rule 45 subpoenas and Rule 30 and 34 notices – a First Set of Requests for Production and three Notices of Deposition (one for a corporate representative and two for HMET's principals). Respondents also served responses to HMET's discovery requests. In those responses, Respondents specifically objected to each document request "to the extent that it seeks documents not located in this Judicial District, as required by 28 U.S.C. §1782 and by the express language of HMET's . . . Application." *E.g.,* PPNA's Objections and Responses to HMET's Proposed Rule 45 Subpoena at 3. Respondents also began producing documents responsive to the proper scope of HMET's requests.

On April 21, apparently unsatisfied with the pace of production, HMET filed a document disingenuously entitled "HMET's Objections to Discovery and Request for the Court's Assistance" (Docket Entry 25). Setting aside the procedural impropriety of the motion,[2] HMET's requested relief was actually quite limited.

First, with respect to its "motion to compel," HMET (a) confirmed yet again the limited geographical scope of its document requests, and (b) claimed that Respondents would not provide deposition dates until HMET had done likewise. *See* Docket Entry 25 at 1 (complaining that Respondents' requests allegedly lacked any "geographical limitation"), 4 (stating that Respondents "criticized that idea that HMET used this application process to ***force European entities to ship documents to the United States***, despite the fact that ***HMET made no such demand***") (emphasis added), 5 (stating that HMET sought only "evidence located in the Northern District of Illinois" and claiming that Respondents were attempting to "condition" HMET's discovery on reciprocal discovery). Notably, ***nowhere*** in HMET's "motion to compel" or in its Reply did HMET ever take issue with, or ask the Court to overrule, ***any*** of Respondents' objections to HMET's document requests, including Respondents' objection to producing any documents located outside of the United States.

Second, with respect to its "motion for protective order," HMET complained that (a) Respondents' document requests were too broad, and (b) HMET's principals were too ill and impoverished to submit to "U.S.-style" depositions, such that Respondents' discovery was not "reciprocal," but "asymmetrical." HMET's Reply at 4 (Docket Entry 30). As to the former complaint, HMET cited only three document requests (Nos. 2, 10, and 12) with which it took

---

[2] *See generally* Respondents' Opposition to HMET's "Objections to Discovery Requests and Request for the Court's Assistance" at 7-8 (Docket Entry 28). The title HMET selected is a misnomer, because the motion was, in reality, a motion to compel and a motion for protective order. It is unclear whether HMET titled the motion as it did in an effort to avoid its obligation to "meet and confer" before filing the motion.

issue.[3]  As to the latter, HMET provided absolutely no evidence to support its claims of frailty and penury, nor did it cite any authority for the proposition that depositions of the *exact same type* HMET demanded were somehow not "reciprocal."

On April 29, the parties appeared before the Court on HMET's motion.  At the hearing, there was no discussion whatsoever of any objections to any discovery.  Rather, the Court expressed concern that the parties had not yet scheduled Respondents' depositions.  Because the Court appeared to believe that Respondents had refused to appear for deposition,[4] the Court stated that it would suspend reciprocal discovery until such time as Respondents had agreed to deposition dates.  Transcript of April 29, 2008, Hearing at 4:12-15.  The Court also ordered the parties to "meet and confer" under the auspices of Rule 26, a meeting that Respondents had been seeking, and in which HMET had refused to participate, for nearly a month.  4/29/08 Transcript at 4:9-11.

### The Court's Stated Intent to Resume Reciprocal Discovery

On April 30, the parties held their Rule 26 "meet and confer."  At the conference, the parties (a) discussed clarification of HMET's document requests (which HMET's Dutch counsel

---

[3] Although Respondents, in their Opposition, refuted HMET's position regarding the relevance and scope of these particular document requests, the underlying facts are not important for present purposes, because the Court never considered, or ruled upon, any of HMET's objections to Respondents' reciprocal discovery.

[4] In reality, Respondents had simply requested – as they had from the beginning of this matter – that the *Court* order HMET to produce its witnesses for depositions first.  The reason for this request is simple:  if Respondents appear for depositions first, then HMET's principals refuse to appear, the Court cannot enforce any order that the principals appear, because the Court lacks jurisdiction over the principals, who are citizens and residents of the Netherlands and who are not represented by any counsel of record in this proceeding.  In this scenario, reciprocal discovery would be an illusion.

Moreover, between the time that Respondents served their responses to HMET's discovery and the time of the April 29 hearing, one of the individuals whom HMET wants to depose (who will also serve as the "representative witness" for non-party PPNA) was out of the country and unavailable for a deposition.  The second witness was minimally available.  And Respondents were still producing documents on a rolling basis.  Thus, even setting aside Respondents' objection to producing its witnesses first, those depositions would not, as a practical matter, have occurred before the time of the hearing on April 29.

had drafted); (b) agreed on a rolling production of documents, starting with HMET's "Exhibit C" and Request No. 2 documents;[5] and (c) agreed to deposition dates for Respondents.

On May 14, while in the midst of document production, Respondents filed a Motion for Extension of Time, after HMET changed its mind about the nature and order of document production. *See supra* note 4 and Docket Entry 33. Although HMET's U.S. counsel was amenable to the extension, HMET's Dutch counsel was not, thus precipitating the motion.

On May 16, the Court held a hearing on Respondents' motion. Despite HMET's written opposition, the Court granted Respondents a ten-day extension of time (until May 27) to complete their document production. When doing so, the Court stated explicitly that it wanted to wrap up document production "so that reciprocal discovery can proceed." Transcript of May 16, 2008, Hearing at 2:17-19. In other words, it was clearly the Court's position that once Respondents completed their promised document production, HMET would have to produce the reciprocal discovery that Respondents had previously requested.

### **Respondents' Completion of Production and HMET's Denial Thereof**

Following the May 16 hearing, Respondents continued to produce documents and, in response to HMET's changing preferences regarding deposition dates, to provide additional dates for Respondents' depositions. On May 27, Respondents completed their production of documents, in accordance with HMET's requests, the Court's directives, and §1782.

On May 29, the parties appeared for a status hearing, at which Respondents' counsel informed the Court that Respondents had completed their promised document production. When HMET's counsel attempted to contradict Respondent's counsel, the Court directed HMET to file

---

[5] HMET later reneged on its agreement regarding these documents. Whereas HMET had agreed at the Rule 26 conference to review these documents in order to determine whether any additional production would be necessary, HMET later demanded all documents responsive to all of its requests, a mere seven business days before the Court's deadline for document production. This new demand inspired Respondents' Motion for Extension of Time. *See infra*. at 6.

any motion relating to document production by Monday, June 9, with a further status hearing on the matter to occur on June 11.

Following the hearing, HMET's counsel approached Respondents' counsel to discuss document production. When HMET's counsel stated his belief that Respondents had not produced all responsive documents, Respondents' counsel informed him that he was mistaken. HMET's counsel persisted by referencing specific types of documents that HMET had allegedly not received. Respondents' counsel replied that HMET had received documents consistent with HMET's requests, Respondents' objections, the Court's directives, and the law, that is, documents located within the United States and in the possession of the Respondents.

HMET's counsel then asserted that Respondents had an obligation to produce documents located in Europe, threatened to file a motion to compel and for sanctions if they failed to do so, and opined that the Court would be "very upset" if Respondents did not capitulate to counsel's demands. In light of §1782 jurisprudence – which Respondents had previously set forth in their Motion for Reconsideration – Respondents' counsel rejected the threat and declined to extend the search for documents beyond U.S. borders.

## ARGUMENT

### I. THE TIME IS RIPE FOR COURT-ORDERED RECIPROCAL DISCOVERY.

#### A. Reciprocal Discovery Is Appropriate Under The Circumstances.

As the foregoing facts make clear, this Court has already approved of reciprocal discovery in this matter. Although the Court temporarily suspended such discovery, pending Respondents' production of documents and agreement to deposition dates, both of those conditions have now been satisfied. Thus, as the Court suggested at the May 16 hearing, the

time is ripe to lift the temporary stay, move on to reciprocal discovery, and close out this matter before this Court.

The United States Supreme Court fully supports this Court's reciprocal discovery order. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Supreme Court confronted a significant policy conundrum: how to maintain parity between the litigants when a foreign party uses §1782 to obtain discovery that its American counterpart cannot obtain in the foreign jurisdiction. 541 U.S. at 261-62. The Supreme Court's answer was simple: allow District Courts to condition the requested discovery upon the foreign party's reciprocal exchange of information with the domestic party. *Id.* at 262. *See also In re Esses*, 101 F.3d 873, 876 (2nd Cir. 1996) (affirming district court order of reciprocal discovery under §1782), and *In re Application of Euromepa S.A.*, 51 F.3d 1095, 1102 (2nd Cir. 1995) (directing district court to consider reciprocal discovery in order to ensure procedural equity, where respondent would otherwise be unable to access comparable discovery from European applicant).

### B. Respondents' Discovery Requests Are Strictly Reciprocal.

In this case, the Court properly required HMET and its principals to submit to reciprocal discovery, in light of HMET's use of a discovery mechanism unavailable to the defendants in the underlying Dutch proceeding. Although HMET has previously argued that Respondents' discovery is not reciprocal, but "asymmetrical," Respondents' discovery is, in fact, a mirror image of HMET's:[6]

- HMET seeks documents relevant to claims and defenses in the Dutch proceedings from one company (non-party PPNA) and from two individuals (Messrs. Hillman and Minter). Respondents seek documents relevant to claims and defenses in the

---

[6] If HMET wishes to challenge specific requests, it needs to schedule a Rule 26 conference with Respondents, as HMET's counsel previously refused to discuss Respondents' discovery requests at the April 30 conference. And if HMET is going to claim physical infirmity and poverty as to its two principals, it will need to provide financial and medical affidavits to support such claims.

> Dutch proceedings from one company (HMET) and from two individuals (Geisen and van Aspert).

- HMET seeks one 30(b)(6) deposition from non-party PPNA and two depositions of individuals who are parties to the Dutch proceedings. Respondents seek one 30(b)(6) deposition and two individual depositions from the plaintiffs in the Dutch proceedings.

Indeed, the burden on HMET is the lesser one, because Geisen and van Aspert *are* "HMET." Thus, all of the relevant documents reside with this married couple in a single location, and either one of them can serve as the "representative witness" for HMET at deposition. Respondents have even agreed to conduct the depositions in the Netherlands, further minimizing the "burden" on the HMET principals.

Respondents do, however, draw the line at HMET's refusal to produce the principals for depositions under the auspices of the Federal Rules of Civil Procedure, which will govern any depositions of Respondents. *See In re Application for an Order for Judicial Assistance in a Foreign Proceeding,* 466 F.Supp.2d 1020, 1025 (N.D. Ill. 2006) (observing that 28 U.S.C. §1782 requires use of the Federal Rules of Civil Procedure in proceedings thereunder, unless the district court specifically orders otherwise when granting a §1782 application). Not only is HMET's offer of Dutch-style, court-supervised questioning inadequate, it is not *reciprocal*, because the procedural standards differ significantly as between Dutch-style and U.S.-style depositions. *See* Docket Entry 15 at 9. What's sauce for the goose is sauce for the gander: HMET simply cannot ask this Court to permit it to obtain discovery to which it is not entitled in the Netherlands, then turn around and try to deny that same type of discovery to Respondents, just because HMET's principals live in the Netherlands. That is precisely why the Supreme Court, in *Intel*, provided for *reciprocal* discovery.

Finally, because HMET's refusal to produce the principals for FRCP-based depositions suggests that HMET will not comply with any Court order that it do so, and because no counsel of record represents the principals in this proceeding, Respondents respectfully request, again, that the Court order HMET to produce Geisen and van Aspert for deposition *before* HMET deposes Respondents.

## II. RESPONDENTS HAVE COMPLIED FULLY WITH ALL CONDITIONS PRECEDENT TO OBTAINING RECIPROCAL DISCOVERY.

### A. There Are No "Other Documents" From This District To Produce.

HMET's ostensible disbelief notwithstanding, Respondents have now completed their good faith effort to collect, review, and produce documents both responsive to HMET's requests and consistent with Respondents' unchallenged objections to those requests. As part of this effort, Respondents collected documents from one entity (PPNA) and two individuals (Messrs. Hillman and Minter), as HMET requested and as the Court directed. They then reviewed some 270,000 documents in order to cull out privileged and non-responsive materials, and processed and produced the rest. Respondents also provided a "privilege log" describing documents withheld on such grounds.

To the extent that HMET believes that other responsive documents "must" exist, there is simply no basis for the belief. Indeed, it seems clear that HMET's dissatisfaction with Respondents' document production arises not from the quality of Respondents' efforts, but from the §1782 mechanism that HMET used to obtain discovery in this country. Put simply, the universe of documents reviewed came from one entity and from two individuals who happen to be located in this District. As HMET itself pointed out in its Opposition to the Motion for Reconsideration, if Respondents do not *possess* certain documents here, they can have no obligation to *produce* them in response to the Application. *See* Opp. at 7 (Docket Entry 21).

Even assuming that Respondents did not produce certain "types" or "categories" of documents, as HMET contends, it simply means that Respondents do not possess such documents in this District, as §1782 and HMET's Application require.

### B. Respondents Had No Obligation To Seek Documents From Europe.

In a 180-degree retreat from its prior assertions that its discovery is limited to "this judicial district," HMET has now threatened motions, sanctions, and dire consequences before this Court if Respondents do not search outside the United States for documents responsive to HMET's requests. Respondents, however, have no obligation to collect documents from Power Plate entities outside of this country.

*First*, as the Supreme Court's opinion in *Intel* makes clear, the purpose of 28 U.S.C. §1782 is to facilitate discovery in the United States as it relates to foreign proceedings, not to undermine foreign limitations on evidence-gathering procedures. *E.g.,* 542 U.S. at 624 (suggesting that U.S. discovery may be improper where the foreign tribunal already has jurisdiction over the parties from whom discovery is sought and warning that parties should not attempt to use §1782 to "circumvent foreign proof-gathering restrictions"). In this case, the independent courts of a sovereign nation (the Netherlands) both *have* jurisdiction over the parties and impose *limitations* on "discovery" in proceedings before them, including circumscribed document collection, court-supervised witness examinations, and proscriptions against third-party discovery. *See generally* Docket Entry 15 at 6-10. As such, HMET's recent demands for broad discovery from separately-incorporated Dutch Power Plate entities find no support in the policies underlying §1782, as set forth in *Intel*.

*Second*, despite HMET's earlier vehement denials (*see* Docket Entry 25 at 4), it now appears that Respondents were right on the money when they warned that "HMET's targeting of

PPNA [was designed] to use PPNA as a 'back door' to discovery of and from [HMET's] European Power Plate adversaries." Docket Entry 15 at 7. Under §1782, however, such foreign discovery is improper. *See Kestrel Coal Pty. Ltd. v. Joy Global Inc.*, 362 F.3d 401, 404 (7th Cir. 2004) (reversing grant of §1782 application as an abuse of discretion and finding that §1782 was not intended to allow foreign litigants to use U.S. courts to obtain discovery from foreign entities through their U.S.-based affiliated entities); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (affirming district court's denial of a §1782 application with respect to documents held outside of the United States and observing that the courts of the country in which the documents are located can make the necessary discovery rulings); *Norex Petro. Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 52 (D.D.C. 2005) (finding that the "body of caselaw suggests that §1782 is not properly used to seek documents held outside the United States" and noting that the court had "found no case in which §1782 has been used to permit the extraterritorial application of §1782"); *In re Sarrio S.A.*, No. 9-372, 1995 WL 598988 at *2 (S.D.N.Y. Oct. 11, 1995) (holding that both the legislative history of §1782 and the statute's chief draftsman held that the purpose of §1782 was to permit discovery of witnesses and documents located in the United States).

Indeed, *Kestrel Coal* and *Norex Petroleum* are, in combination, on all fours with the present situation. In *Kestrel Coal*, Kestrel, an Australian company, sued Joy Global, an American company, and four of its Australian and British subsidiaries in an Australian court. When Kestrel was denied discovery in Australia, it filed a §1782 application in Wisconsin, where Joy Global was based, and demanded that Joy Global retrieve documents from its foreign subsidiaries, for use in the Australian proceeding. 362 F.3d at 402-03. In reversing the district court's grant of the application, Judge Easterbrook cited the author of §1782, who had written

that "Section 1782 was not intended to enable litigants to obtain in Spain evidence located in Spain that could not be obtained through proceedings in Spain." *Id.* at 404 (citing Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l. L. & Commerce 1, 11 (1998)). Judge Easterbrook then observed that "[o]ne uses Fed. R. Civ. P. 34 to get documents from firms that possess them, **not from their corporate affiliates**." *Id.* at 405 (emphasis added). In *Kestrel Coal*, Judge Easterbrook found, the documents at issue were not only outside of the United States, they were "in the custody of Joy Global's subsidiaries, which [were] not parties to [the] proceeding under §1782." *Id.* at 404.

Similarly, in *Norex Petroleum*, Norex, a Canadian company, sought from BP America, a U.S.-based non-party, documents held by BP's European parent. 384 F.Supp.2d at 46. After a magistrate judge ordered the discovery, the District Court overturned the decision as clearly erroneous and contrary to law. *Id.* at 47-48, 57. In doing so, the court analyzed the legislative history of §1782 and found that the statute was "not intended to provide discovery of evidence maintained within a foreign jurisdiction." *Id.* at 50-51. The court also examined the relevant case law that came to the same conclusion. *See id.* at 50-53. Finally, the court held that irrespective of the purport of §1782, Norex had failed to establish, as a matter of law, that BP America had possession, custody, and control over its parent's documents, pursuant to Rule 34 or Rule 45. *Id.* at 56.

In the present case, HMET has now demanded documents from European affiliates of a U.S.-based non-party (PPNA) both through that non-party (as in *Norex Petroleum*) and through two individuals who *are* parties to the Dutch proceedings (as, analogously, in *Kestrel Coal*). Even in *Kestrel Coal*, where the corporate target of the application was a *party* to the foreign proceedings *and* a parent of the foreign companies, the Seventh Circuit refused to permit such

discovery.  Here, however, the real targets of HMET's document demands are merely *affiliates* of PPNA, with their own, non-U.S. places of incorporation and their own legal structures.  Thus, as in both *Kestrel Coal* and *Norex Petroleum*, the documents at issue are in the custody of independent, foreign-based non-parties to this proceeding and are, therefore, unavailable to HMET through its Application.

## CONCLUSION

Respondents have complied fully with the Court's directives with respect to discovery under HMET's Application, and HMET is entitled to nothing more.  In light of the Court's earlier order granting Respondents reciprocal discovery, the time has now come for that discovery to occur.  Consequently, Respondents respectfully request that the Court order HMET to produce documents and witnesses responsive to Respondents' subpoenas and notices and in a manner consistent with the Federal Rules of Civil Procedure.

                                  Respectfully submitted,

Date:  June 4, 2008                    By: /s/ Amy A. Pines
                                            Scott A. Meyers
                                            Kurt Stitcher
                                            David W. Porteous
                                            Amy A. Pines
                                            LEVENFELD PEARLSTEIN, LLC
                                            2 N. LaSalle St., Suite 1300
                                            Chicago, Illinois  60602
                                            Phone:  (312) 346-8380
                                            Facsimile:  (312) 346-8434
                                            kstitcher@lplegal.com

                                            *Attorneys for Respondents Lee S. Hillman,*
                                            *Mark C. Minter, and Power Plate North America*

## CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Local Rule 37.2, and the rules of this Court, the undersigned hereby certifies that counsel for Respondents have attempted to resolve the issues raised in this motion with opposing counsel, without success. Specifically, HMET's counsel have declined to discuss Respondents' reciprocal discovery requests, both in writing and in a face-to-face meeting on April 30, 2008, and HMET's counsel have, in a face-to-face meeting on May 29, 2008, demanded that Respondents extend to Europe their search for documents responsive to HMET's Application requests. Thus, Respondents' counsel have been unsuccessful in resolving the foregoing issues without resort to the Court.

LEVENFELD PEARLSTEIN, LLC


/s/ Kurt Stitcher
By One of Its Attorneys