IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Application of Holland Middle East Trading Ltd. to Obtain Discovery For Use in a Suit Pending in the Haarlem District Court of the Kingdom of the Netherlands. | ) ) ) ) ) ) ) | No. 08 CV 1344<br><br>Hon. Ruben Castillo<br><br>Magistrate Judge Martin C. Ashman |

**HOLLAND MIDDLE EAST TRADING LTD.'S
MOTION FOR CONTEMPT AND ATTORNEYS' FEES**

Applicant Holland Middle East Trading Ltd. ("HMET"), by its attorneys, moves this Court to hold Power Plate North America, Lee Hillman and Mark Minter ("Power Plate") in contempt under Rules 37 and 45 for their disregard of this Court's orders. HMET has tried, unsuccessfully, to control the costs on this matter, which was intended to be a relatively straightforward gathering of evidence to be used in the Dutch lawsuit. In turn, Power Plate has met HMET's discovery requests with delays and belligerence, inflicting mounting costs upon HMET along the way. Power Plate has failed to produce documents within their control, and has made sweeping and unwarranted claims of privilege to justify the withholding of documents.

**I.    Power Plate Has Failed to Produce Documents Reasonably Expected to Be Within Its Control**

Twelve weeks after this Court's first order to produce documents, Power Plate has stated to the Court orally and in writing that it has concluded its production. HMET has received roughly 4000 pages of (often duplicate) documents, accompanied by a facially insufficient 45-page privilege log.

Mark Minter of Chicago is president of Power Plate International, and both he and Lee Hillman of Glencoe are directors of Power Plate International. The North American office of the Power Plate global business is located on Skokie Boulevard in Northbrook, and

182000_1.doc

presumably offers Mssrs. Minter and Hillman access to any electronically accessible documents of Power Plate internationally. Despite the access afforded to Power Plate, its production fails to include whole categories of documents that almost certainly are within the company directors' control, for example:

- No financial statements of any kind
- No board minutes, meeting invitations or meeting materials
- No marketing or sales presentations
- No documents pertaining to personal or corporate assets from which HMET can collect any judgment against Power Plate awarded in the Netherlands
- Power Plate produced one weekly sales forecast for the week of December 1, 2006, but no other weekly sales forecasts dating before or after
- No signed escrow agreement from J.H. Whitney's acquisition of Power Plate B.V.
- No due diligence report related to J.H. Whitney's acquisition of Power Plate B.V.
- No e-mails to or from Mark Minter about potential sales of Power Plate machines into Morocco
- Only 10 lines of text pertaining to Harrods Department Store's sales of Power Plate machines into HMET's territory
- No internal Power Plate e-mails about Harrods Department Store's sales of Power Plate machines into HMET's territory
- Only 10 pages of sales figures for the 12 countries within HMET's territory over a four-year period
- No Power Point presentation on Middle East sales potential shown at December 2006 meeting with Al Kamda, the distributor that replaced HMET

These documents, among others, are central to proving HMET's contract claims and damage claims in the Dutch litigation.

Mr. Minter and Mr. Hillman are directors of Power Plate International, and their own e-mails demonstrate that both are actively involved in its day-to-day business operations. A sample e-mail (attached as Exhibit A) illustrates how Mr. Minter and Mr. Hillman are apprised

of even low-level issues, and dictate policy and strategy in response. Given their hands-on roles, HMET believes that information central to HMET's claims lies with them. All of the documents in the categories listed above are created in the normal course of business and undoubtedly exist; indeed, Power Plate's privilege log lists hundreds of them. Due to their high-level positions within Power Plate International, Mssrs. Minter and Hillman have access to and control over these documents, and they should produce them.

Power Plate apparently concedes that the documents exist, but now contends that they are located "outside the United States." Power Plate's electronic files, however, are not located abroad. Mssrs. Minter and Hillman travel internationally for approximately two weeks per month. Their ability to conduct their global business is premised on electronic access to business information and documents wherever and whenever they need it. Mr. Minter carries a BlackBerry to have constant access to e-mail here and wherever he travels. Such files are not physically located in one particular place, but are certainly accessible by Power Plate and its directors as they work within this Court's district. At least during HMET's time as a distributor, Power Plate's server was located at the Power Plate North America facility in Northbrook. As a result, HMET is entitled to discovery of such information. Indeed, the Supreme Court's *Intel* decision contemplates the reach of § 1782 for evidence "available in the United States." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *see also Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, 2005 WL 3367044 *5 (S.D.N.Y. Dec. 12, 2005) (physical location of computer servers is irrelevant for transfer determination because the documents were stored electronically and could be "accessed from anywhere").

Even if Power Plate's paper records (to the extent that they exist) were located outside of this district, the plain text of 28 U.S.C. § 1782 requires only that the person from

3

whom documents are sought "resides or is found" in the district issuing the order, not that the documents themselves are found in the district. Because it is uncontroverted that Power Plate North America and Messrs. Minter and Hillman are found in this district, they can be compelled to produce documents under their control, including those found outside Illinois.

Power Plate's reliance on the Seventh Circuit's pre-*Intel* decision in *Kestrel Coal Pty. Ltd v. Joy Global Inc.* is beside the point. 362 F.3d 401 (7th Cir. 2004). In *Kestrel*, the Seventh Circuit explicitly declined to decide whether documents abroad can be accessed in a § 1782 action, ruling instead that the documents were not available because they were not in the custody of the respondent, but rather in the custody of the respondent's subsidiary. *Id.* at 404. No such request is made here: HMET requests documents belonging to Power Plate North America, a respondent to the application, and to Power Plate International, of which Mr. Minter is the president and a director and Mr. Hillman is a director.

Power Plate has deliberately failed to produce the requested documents despite repeated orders from this Court.[1] Rules 37 and 45 permits a court to impose sanctions when a party fails to obey an order to provide discovery. Fed. R. Civ. P. 37(b) and 45(e). Sanctions are appropriate in cases where a party resists discovery willfully or in bad faith, or through "contumacious conduct" or "dilatory tactics." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993); *see also Rothman v. Emory Univ.*, 123 F.3d 446, 455 (7th Cir. 1997) (district

---

[1] Power Plate has delayed by first filing a motion to reconsider that clearly failed to meet the standard set forth in this Court's standing order on motion practice, and then refusing to provide deposition dates to HMET until the Court entered an additional order. It demanded a confidentiality agreement, and then waited to submit the first draft until past 11:00 p.m. on the night the Court's deadline for full document production – Power Plate had no intention of complying with that order either. It has failed to produce routine corporate governance and financial reporting documents, and submitted a facially insufficient privilege log listing blatantly nonprivileged material.

4

court properly imposed sanctions of attorneys' fees on party who failed to provide requested documents after repeated court orders).

Power Plate should not be permitted to provide only insurance policies and multiple copies of innocuous e-mails in an attempt to create the appearance of compliance. HMET has incurred substantial attorneys' fees to force compliance with its original discovery request, which Power Plate has continued to evade. Power Plate's behavior warrants the imposition of attorneys' fees and costs under Rule 37(b)(2)(C) and 45(e).

## II.     Power Plate's Deficient Privilege Log Lists Documents Not Subject to Privilege

Despite its incomplete of information, Power Plate's privilege log further demonstrates HMET's claim that Power Plate has failed to produce all responsive documents within their control. *See* Privilege Log, attached as Exhibit B. Many requested documents appear on Power Plate's privilege log, such as cash flow forecasts, correspondence regarding insurance policies, and documents surrounding J.H. Whitney's acquisition of Power Plate. *See, e.g.*, Entries #2-8, 10, 13-16, to cite examples from the log's first page. What does not appear on the log is an appropriate basis for a claim of privilege.

The first 357 entries long pre-date Power Plate's termination of HMET's contract. Power Plate terminated the contract in October of 2006. The vast majority of subjects provided for the documents on the log give no indication that the communication was for the purpose of seeking or giving legal advice, nor does the time frame make it likely that the document was created in anticipation of litigation. The documents attached to the e-mails are unlikely to be privileged: for example, Entries #2, 10 and 16 appear to attach a cash flow forecast. Even if the e-mail requested legal advice on the attached forecasts, the forecasts themselves are not subject to privilege.

More inexplicably, more than 157 entries on the privilege log definitely do not list an attorney in any field. Because Power Plate failed, even after two requests, to provide a description of the roles of the people on the privilege log, HMET was forced to evaluate the log based on the names with which HMET was familiar.[2] Additionally, many more entries included an attorney's name only in the carbon copy field, indicating that the attorney may have received a copy just for his or her information. Power Plate did not state how the attorney-client privilege attaches to e-mails such as these. Privilege does not attach to a communication solely because an attorney is involved.

Additionally, documents must be kept confidential within an attorney-client relationship to be eligible for a claim of privilege. The Court will see, even based on the sparse information provided, that many documents on the privilege log are not confidential. Entries #293 and #439 were written by Frans Giezen, HMET's principal, but Power Plate evidently claimed privilege because an attorney was copied on Mr. Giezen's e-mail. Another example is found in Entries #483 and #484, in which an attorney sends e-mail to what appears to be the generic contact address for a business called "Whole Body Vibes." There is no attorney-client relationship in any of these examples.

Even though Power Plate's privilege log lacks most of the information required to set forth a claim of privilege, the information provided shows that many of the documents listed are not subject to either attorney-client or work product privilege. Power Plate has failed to carry its burden to establish privilege, and should be deemed to have waived privilege for all the documents on the privilege log.

---

[2] If the name was not known to HMET, HMET gave Power Plate the benefit of the doubt and assumed it belonged to an attorney. HMET was not familiar with many names noted on the log.

6

### III. The Privilege Log Lacks the Required Information

Power Plate's privilege log does provide the information required to establish privilege, and thus their claims of privilege must fail. First, the log fails to indicate the capacities of the documents' authors and recipients, leaving HMET to guess at whether the people named are attorneys. Second, the log gives only the subject line of the e-mail, regardless of how opaque the subject line may be. Some entries lack even the subject line. Power Plate has provided no description of the subject matter of the documents. Third, Power Plate made no attempts to describe the purpose of the documents' production. Fourth, the log includes no particularized explanation of why the document is privileged. Indeed, Power Plate claimed both the attorney-client privilege and the work product privilege for each and every document, which is clearly impossible.

When a party withholds an otherwise-responsive document pursuant to a claim of privilege, Rule 26 requires a description "of the nature of the documents" withheld that will "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The party asserting the privilege bears the burden of establishing each of the following criteria:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000).

The privilege log must be sufficiently detailed to demonstrate that each document satisfies each of these elements. *Abbott Laboratories v. Alpha Therapeutic Corp.*, 2000 WL 1863543, *3 (N.D. Ill. 2000). A privilege log must contain the following information for each document:

- Date
- Author and recipients, along with their capacities
- Subject matter
- Purpose of production
- Specific explanation of why the document is privileged

*Id.* Generic descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation" are not sufficient. *Id.* A failure to meet these standards is a failure to meet the burden to establish the protection of privilege. *Id.*

Due to the log's insufficiency and Power Plate's improper assertions of privilege, Power Plate should be deemed to have waived attorney-client or work product privilege for the documents on the privilege log.

### IV. Power Plate Has Failed to Comply with This Court's Orders, and Thus Are Not Entitled to Reciprocal Discovery at This Time

Because of its incomplete document production and inappropriate claims of attorney-client and work product privilege, Power Plate has not fulfilled its discovery responsibilities. On June 18, moreover, HMET will file in the Dutch court a detailed pleading along with thousands of documents attached that more than responds to Power Plate's discovery requests. Power Plate should review those documents and can thereafter determine whether they believe they need further documents or depositions. HMET's depositions have all been put on hold due to Power Plate's inadequate document production. Given the schedule in the Netherlands, whether they will proceed is now unlikely, as the testimony has been delayed past the point at which it could probably be used. As a result, this Court should continue to stay reciprocal discovery pending Power Plate's compliance with the Court's orders and review of the documents submitted in the Dutch proceedings.

## Conclusion

From the outset, Power Plate has taken actions large and small to delay and inflict costs on HMET. Even the Court's successive orders on March 17, April 3, and April 29 (Docket #9, #23 and #31) have failed to convince Respondents that they are required to produce all responsive documents within their control. Instead, they have produced numerous unimportant e-mails in the hope that the Court will overlook the absence of basic corporate governance and financial reporting documents. Power Plate should again be directed to produce its documents, and should be sanctioned through a waiver of its privilege claims and the award of reasonable costs to HMET.

Dated: June 9, 2008                                        Respectfully submitted,

By: /s/Lindsay Wilson Gowin
     One of the Attorneys for Applicant Holland
Peter V. Baugher                                           Middle Trading Ltd.
Lindsay Wilson Gowin
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone: 312.701.9300
Facsimile: 312.701.9335
E-mail: lgowin@sw.com

**CERTIFICATE OF SERVICE**

I, Lindsay Wilson Gowin, an attorney, hereby certify that a copy of the attached Holland Middle East Trading Ltd.'s Motion to Compel was filed electronically with the Clerk of the Court using the CM/ECF system on this 9th day of June, 2008, which will automatically send e-mail notifications of such filing to counsel below and those counsel enrolled in the system:

>Scott A. Meyers
>Kurt Stitcher
>David W. Porteous
>Amy A. Pines
>Levenfeld Pearlstein, LLC
>2 North LaSalle Street, Suite 1300
>Chicago, Illinois 60602
>Facsimile: 312.346.8434

>/s/Lindsay Wilson Gowin
>Lindsay Wilson Gowin