IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Application of Holland Middle East Trading Ltd. to Obtain Discovery for Use in a Suit Pending in the Haarlem District Court of the Kingdom of the Netherlands | Case No. 08-CV-1344<br><br>Hon. Ruben Castillo<br><br>Magistrate Judge Martin C. Ashman |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO
HMET'S "MOTION FOR CONTEMPT AND ATTORNEY'S FEES"**

HMET's Motion for Contempt and Attorney's Fees is devoid of any basis in fact or law. Instead, it represents part of HMET's ongoing effort to impose costs upon its European Power Plate adversaries in an effort to extract a favorable settlement in the underlying Dutch litigation. The Court should reject this stratagem.

*First*, HMET provides nothing but supposition, and absolutely no case law, in support of its novel argument that under 28 U.S.C. §1782, an individual officer or director may be required to collect documents from affiliated entities located all over the world. This failure is not surprising, because there is no basis in fact or law for the argument, much less for "sanctions" when an individual party rightly declines to undertake such a task.

*Second*, HMET's complaints about Respondents' privilege log are premature, because, once again, HMET has made no effort to resolve its gripes before resorting to motion practice. And even if HMET's assertions were valid, HMET cites no case law – because there is none – to support an argument that Respondents have "waived" all privilege claims by failing to provide a privilege log that meets HMET's expectations.

*Third*, HMET's true colors shine through when it argues that the Court must stay reciprocal discovery until HMET has produced cherry-picked documents in the Dutch

proceedings. This request, combined with HMET's constant delay in conducting (and recent apparent cancellation of) depositions, demonstrates clearly that HMET has no intention of providing reciprocal discovery, contrary to this Court's prior order.

Because HMET has adduced no facts or law to support its demands for sanctions and has utterly failed to refute the facts and law Respondents cite in their Motion for Reciprocal Discovery, Respondents respectfully request that the Court *deny* HMET's misguided motion and *grant* Respondents' Motion for Reciprocal Discovery.

## ARGUMENT

### I. RESPONDENTS HAVE NO OBLIGATION TO COLLECT DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES.

#### A. The Facts.

In support of proceedings in the Netherlands, HMET attempted (unsuccessfully, under the Federal Rules of Civil Procedure) to serve Rule 45 subpoenas on one entity (Power Plate North America, a U.S.-based, privately-held company incorporated under Delaware law ("PPNA")) and two U.S.-based Directors of PPNA (Lee Hillman and Mark Minter). Despite the lack of any valid subpoenas, PPNA and Messrs. Hillman and Minter undertook to produce their respective documents. At no time during this process did PPNA or Messrs. Hillman and Minter attempt to collect documents from any of PPNA's European affiliates (separately-incorporated subsidiaries of PPNA's privately-held parent). That is to say, Respondents produced hard copy and electronic documents located in the United States only.

Although irrelevant for purposes of a §1782 analysis, HMET's factual assertions regarding the structure of "Power Plate" (there is no such entity) are incorrect. First, HMET provides no factual basis, nor is there any, for its assertion that Messrs. Hillman and Minter

could, in a manner consistent with the Federal Rules of Civil Procedure, search for, and produce, documents from Europe through computers located in Northbrook, Illinois. *See* Motion at 1-2. Second, HMET cites no factual basis for its ambiguous claim that "Power Plate's [sic] server was located at the Power Plate North America facility in Northbrook" (Motion at 3), nor is the assertion relevant, because all of the European entities' servers are located in Europe. Third, because Respondents did not search Europe for documents, they make no "concession" regarding the existence of any additional documents responsive to HMET's requests, contrary to HMET's unsupported claim to that effect. *See* Motion at 3.

In short, HMET bases its motion on rank speculation and misstatements about the facts underlying Respondents' collection and production of documents in this proceeding.

**B.     The Law.**

In their Motion for Reciprocal Discovery, Respondents set forth, and explain, extensive case law to support their position that they had no obligation to produce documents located outside of the United States. In response, HMET simply states the opposite, albeit without a shred of factual or legal support for its position. ***First***, HMET sprinkles its argument with the words "custody" and "control," but it cites ***no facts or case law*** to bolster an argument that either (a) Messrs. Hillman and Minter *have* "custody" or "control" over documents held by European affiliates of PPNA, or (b) "custody and control" are in any way relevant to a §1782 analysis. *Cf. Chaveriat v. Williams Pipeline Co.*, 11 F.3d 1420, 1426-27 (7th Cir. 1993) (Posner, J.) (finding, in the Rule 34 context, that a party did not have "possession, custody or control" over testing samples held by a sub-contractor and stating that "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean the document is in its possession, custody, or control; in fact, it means the opposite"); *Klesch & Co., Ltd. v. Liberty*

*Media Corp., et al.*, 217 F.R.D. 517, 520 (D. Colo. 2003) (noting that the Seventh Circuit imposes a stricter "legal right to demand" standard for "control" under Rule 34).

***Second***, while HMET makes much ado about the fact that the Seventh Circuit's opinion in *Kestrel Coal* pre-dates the Supreme Court's ruling in *Intel* (*see* Motion at 3), there is nothing in *Intel* that in way overrules, or even detracts from, the Seventh Circuit's holding in *Kestrel Coal*. Indeed, the *Intel* court simply never reached the issue of producing documents located abroad and could not, therefore, have "overruled" *Kestrel Coal*, even by implication.

***Third***, the single case that HMET cites with respect to the "location" of documents is so far irrelevant as to call into question HMET's good faith in citing it. Indeed, the unreported New York case of *Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005), addresses ***discretionary transfer of cases under 28 U.S.C. §1404(a)***. It has absolutely nothing to do with §1782. Even giving HMET the benefit of the doubt as to its intent in citing this case, *Houlihan* stands for nothing more than the unremarkable proposition that when deciding where "evidence" is located under §1404(a), the court may consider electronic evidence to be "available" to either party in either potential U.S. jurisdiction. 2005 WL 3367044 at *5.

***Fourth***, in making its misguided "availability" argument, HMET conveniently ignores all of the case law that Respondents cite in their Motion for Reciprocal Discovery. *See* Resps' Motion at 11-14. Not only does the relevant case law hold that responding parties have no obligation to collect documents from outside of the United States, several cases also cite the legislative history of §1782 – including quotes from the author – as proof that §1782 was ***not*** designed to provide for foreign discovery. *Id.* HMET adduces no facts or law to refute this position.

*Fifth*, HMET cites absolutely no case law to support its argument that by serving discovery on an individual officer or director of a company, a party can obtain discovery from any related entity anywhere in the world. *See* Motion at 4. Nothing in the language of §1782, or in the case law interpreting it, supports such a proposition. Indeed, the policy implications of HMET's argument are staggering. Under HMET's theory, a party could "find" the CEO of a multinational corporation during a stopover at O'Hare, serve the CEO with a subpoena, and demand that the CEO collect documents from every affiliated entity in every corner of the world for use in a proceeding having nothing to do with the United States or with any of the entities burdened with responding to the request. Neither §1782, nor the Federal Rules, nor human logic sustain such a proposition.

*Sixth*, even setting aside all of the foregoing fatal flaws in HMET's arguments, Respondents' "failure" to collect documents from outside of the United States could never justify sanctions. Because (a) HMET never effected valid service of subpoenas on Respondents, (b) the Court never ordered Respondents to collect documents from Europe, and (c) HMET cites no case law requiring the production of foreign documents, HMET lacks any factual or legal basis for requesting sanctions.

## II. HMET'S COMPLAINTS ABOUT THE PRIVILEGE LOG ARE PREMATURE, AND ITS REQUEST FOR SANCTIONS IS WITHOUT ANY LEGAL BASIS.

### A. The Facts.

When reviewing the 270,000 pages of electronic documents that they collected in this matter, Respondents – with the assistance of a third-party electronic discovery vendor – generated a "privilege log," using as selection criteria the names of Power Plate entity employees and outside counsel. In an effort to provide a privilege log as quickly as possible, Respondents then submitted this draft log to HMET before the last status hearing.

Since that time, Respondents have continued to review the log and to eliminate entries reflecting non-responsive documents, which currently comprise one-half or more of the entire log. Respondents have also, at HMET's request, attempted to compile a list of affiliations with respect to every individual whose name appears anywhere on the log. Finally, Respondents are working to withdraw objections as to any specific documents that do not meet the criteria for protection under applicable privilege law. Respondents hope to have all three tasks completed shortly.

Notably, prior to filing its "Motion for Contempt," HMET did not raise with Respondents any issue regarding the adequacy of the privilege log. Nor, of course, had the Court entered any order requiring the production of such a log by any specific date or in any particular form.

### B. The Law.

Even assuming, *arguendo*, that HMET has any valid basis for its complaints about the draft privilege log, its demand for a blanket waiver of privilege as to every document on the log is without any basis in the law, as evidenced most compellingly by HMET's failure to cite a singe case in support of its demand. *See* Motion at 6. Moreover, as noted above, HMET's failure to serve valid subpoenas, the lack of any Court order regarding a privilege log, HMET's failure to "meet and confer" with respect to the log, and the lack of any supporting case law all preclude the possibility of any sanction relating to Respondents' submission of the log.

### III. AS RESPONDENTS DEMONSTRATED IN THEIR MOTION, THE TIME HAS COME FOR RECIPROCAL DISCOVERY.

In the last section of its Motion, HMET gives up the game. After having imposed upon Respondents astronomical costs for document collection, review, processing, and production, and after having forced Respondents to prepare for thrice-postponed depositions, HMET now asserts that (a) HMET is unlikely ever to take any depositions in this matter, and (b) HMET has

no intention of providing Court-ordered reciprocal discovery. *See* Motion at 8. In lieu of reciprocal discovery, HMET offers up a future filing in the Dutch proceeding that will purportedly contain "thousands" of hand-picked documents that HMET presumably believes support its claims in that proceeding.

***This is not reciprocal discovery under §1782.*** Rather, this is exactly what the parties would have exchanged in the Dutch proceedings had they never set foot in this Court. But that ship has sailed. By coming to America and demanding production of documents from U.S.-based entities and individuals, HMET has subjected itself to §1782, *Intel*, this Court's jurisdiction, and reciprocal discovery. It cannot now seek to dictate the terms of a process that this Court controls.

All of HMET's palaver reduces to one simple duality: Section 1782 either does or does not compel Respondents to collect documents from Europe. If, as Respondents submit, it does ***not***, then HMET's document discovery is over. In that case, Respondents have fulfilled this Court's preconditions for obtaining reciprocal discovery, and that process should begin as soon as possible, not at some future date and under such terms as HMET might wish to dictate.

## CONCLUSION

HMET's demands for sanctions have no basis in fact or law. Respondents have complied with this Court's directives and with the law under §1782; HMET is entitled to nothing more. The time for reciprocal discovery is upon us. Consequently, Respondents respectfully request that the Court *deny* HMET's misguided Motion for Contempt, *grant* Respondents' Motion for Reciprocal Discovery, and *grant* Respondents their costs and fees incurred in responding the HMET's meritless motion.

                Respectfully submitted,

Date: June 10, 2008            By: /s/ Amy A. Pines
                                        Scott A. Meyers
                                        Kurt Stitcher
                                        David W. Porteous
                                        Amy A. Pines
                                        LEVENFELD PEARLSTEIN, LLC
                                        2 N. LaSalle St., Suite 1300
                                        Chicago, Illinois 60602
                                        Phone: (312) 346-8380
                                        Facsimile: (312) 346-8434
                                        kstitcher@lplegal.com

                                        *Attorneys for Respondents Lee S. Hillman,*
                                        *Mark C. Minter, and Power Plate North America*

## CERTIFICATE OF SERVICE

I, Amy A. Pines, an attorney, hereby certify that on June 10, 2008, I caused a copy of the foregoing Respondents' Memorandum in Opposition to HMET's "Motion for Contempt and Attorney's Fees" to be filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send email notifications of such filing to the following attorneys: Peter V. Baugher and Lindsay Wilson Gowin of Schopf & Weiss LLP, One South Wacker Drive, 28th Floor, Chicago IL 60606.

By: /s/ Amy A. Pines

LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
Phone: (312) 344-8380
Facsimile: (312) 346-8434
apines@lplegal.com

*Attorney for Respondents Lee Hillman,
Mark Minter, and Power Plate North America*