# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re Application of Holland Middle East Trading Ltd. to Obtain Discovery for Use in a Suit Pending in the Haarlem District Court of the Kingdom of the Netherlands | Case No. 08-CV-1344<br><br>Hon. Ruben Castillo<br><br>Magistrate Judge Martin C. Ashman |

### RESPONDENTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Lee Hillman, Mark Minter, and Power Plate North America (collectively, "Respondents") hereby request that Petronella Johanna Elizabeth Van Aspert produce the following documents, in accordance with the instructions and definitions set forth below, at the offices of Levenfeld Pearlstein, LLC, 2 N. LaSalle St., Suite 1300, Chicago, Illinois, 60602, within thirty days of the date of service hereof.

### DEFINITIONS AND INSTRUCTIONS

1. "Applicant" or "HMET" means Holland Middle East Trading Ltd., its predecessors, successors, and assigns, and all other persons acting or purporting to act on its behalf, whether individually or collectively, including, but not limited to, any officers, directors, and employees, including, but not limited to, Franciscus Antonius Maria Giezen ("Giezen") and Petronella Johanna Elizabeth van Aspert ("van Aspert").

2. "HMET Group" means HMET, Power Plate Trading LLC, Holland Enterprises Group, Power Plate Middle East, and Power Plate Center Dubai, as well as their predecessors, successors, and assigns, and all other persons acting or purporting to act on their behalf, whether individually or collectively.

3. "You" or "your" mean "Applicant," "HMET," and/or "HMET Group," as defined above.

4. "Respondents" means Mark Clive Minter, Lee Scott Hillman, and Power Plate North America, Inc., collectively.

5. "PPI" means Power Plate International, B.V., its predecessors, successors, and assigns, and all other persons acting or purporting to act on its behalf, whether individually or collectively.

6. "Power Plate" means Power Plate International, a Delaware General Partnership, and any legal entity affiliated therewith, including PPI, PPI Holdings, PPI Acquisition B.V., Power Plate International Ltd., and Power Plate North America, Inc.

7. "Sub-distributors" and "representatives" mean those persons or entities who were authorized by you to act on your behalf in any country with respect to the distribution of Power Plate equipment.

8. "Licensee Agreements" means the written agreements between HMET and PPI by which HMET was licensed to distribute Power Plate equipment in those countries specified in the Licensee Agreements, which were dated 20 September 2004 and 1 June 2005, respectively.

9. "This Action" means the matter pending in the United States District Court for the Northern District of Illinois, Case No. 08-CV-1344.

10. "Foreign Litigation" means the action entitled *Holland Middle East Trading Ltd., et al. v. Power Plate International B.V., et al.,* commenced in the Haarlem District Court in the Netherlands in 2006.

11. "Person(s)" means all natural persons and all forms of business organizations, including corporations, partnerships, limited partnerships, unincorporated associations, trusts, governmental bodies, and/or all other identifiable entities.

12. "Documents" is used in the broadest possible sense and means all written, printed, typed, graphic, recorded or illustrative matter, computer memory, tapes or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including, but not limited to: written communications, e-mail, letters, words, numbers, pictures, sounds, symbols or any combination thereof; correspondence, envelopes, computer printouts, teletypes, telecopies, memoranda of telephone conversations or personal conversations, diaries, calendars, time sheets, interoffice communications, records, reports, studies, bills, receipts, checks, checkbooks, invoices, requisitions, tape or disk recordings, x-rays, papers and forms filed with any court or governmental body, notes, transportation and expense logs or records, work papers, contracts, formal or informal memoranda of meetings, studies, analyses, statistical and financial statements, charts, graphs, reports or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access. Finally, the term "document" shall be interpreted as expansively as permitted under Rule 34 of the Federal Rules of Civil Procedure.

13. "Communication" means the recording, conveyance, or exchange of information of any kind by or with any person, representative, or entity for any purpose by any written, verbal, or electronic means or method.

3

14. The words "and" and "or" also mean "and/or." The words "any" and "all" also mean "any and all."

15. "Relate to" or "relating to" means constituting, consisting of, referring to, concerning, reflecting, or being in any way legally, logically, or factually connected with the matter discussed.

16. If you assert that any document requested herein is privileged or otherwise immune from discovery, provide a list with the following information for each such document: (a) its date; (b) its author; (c) all addressees or recipients of the original or copies thereof; (d) a brief description of its subject matter and physical size; and (f) the nature of the privilege or immunity claimed.

17. If, at any time, you had possession, custody, or control of a document requested herein, and if such document has been lost, destroyed, purged, or is not presently in your possession, custody, or control, identify the document; the date of its loss, destruction, purge, or separation from your possession, custody, or control; and the circumstances surrounding its loss, destruction, purge, or separation from your possession, custody, or control.

18. In producing documents, segregate them so that they are responsive to each numbered request and note with respect to each group of documents the request to which it is responsive.

19. Unless the request specifically states otherwise, references to the singular include the plural and vice versa; references to one gender include the other gender; references to the past include the present and vice versa; and disjunctive terms include the conjunctive and vice versa. The term "including" shall be construed without limitation.

4

20. In producing the documents described below, when the documents exist in a file, you are requested to furnish the entire file containing the documents or, alternatively, to identify the files from which the documents were taken and then to produce the documents in the same order as they existed in those files.

21. This First Request for Production shall be deemed continuing so as to require further and supplemental production if any additional documents responsive to this production request come into your possession, custody, or control, in which case you shall produce any such additional documents within ten days of their coming into your possession, custody, or control. If any such additional documents, or any portions thereof, are withheld from production upon a claim of privilege or for any other reason, you are requested promptly to serve upon Respondents a written identification of each such document or portion of a document, setting forth the information described in paragraphs 1-3 of the instructions herein.

22. Unless otherwise indicated in a request, the requests shall refer to the time period from January 1, 2003, to the present.

## DOCUMENT REQUESTS

Please produce the following documents:

1. Any and all documents relating to the corporate and/or legal structure of each and every entity within the HMET Group, including, but not limited to, deeds and/or articles of incorporation; deeds and/or articles of association; business licenses; organizational charts; by-laws; Board of Directors resolutions and meeting minutes; submissions to any Chamber of Commerce or similar business organization, wherever located; and any and all documents relating to HMET's ability or inability to conduct any business outside of the "Jebel Ali Free Zone" in Dubai, United Arab Emirates.

2. Any and all documents relating to Giezen and van Aspert's identification, business, employment, and/or travel documents, including, but not limited to, passports, visas, work permits, residency cards, driver's licenses, business licenses, accreditations, business organization memberships, and business cards.

3. Any and all documents relating to the business relationship between any and all HMET Group entities and PPI (including the origins, conduct, and termination thereof), including, but not limited to, internal and external communications within, between, among the HMET Group and PPI; HMET Board of Director resolutions and/or minutes; letter agreements; memoranda of understanding; letters of intent; contracts; and agreements in any form, including any and all drafts of the foregoing documents.

4. Any and all documents relating to your removal, covering, or obscuring of any mark, label, plate, tag, or other indication, in whatever form it existed, that any particular piece(s) of Power Plate equipment had been manufactured in the People's Republic of China ("China"), including, but not limited to, any and all documents relating to (a) your contention that any particular piece(s) of Power Plate equipment had not, in fact, been manufactured in China; (b) your contention that PPI at any time authorized – directly or indirectly, explicitly or implicitly – your removal, covering, or obscuring of such markings; and (c) your contention that your removal, covering, or obscuring of such markings in no way negatively affected, or caused damage to, PPI.

5. Any and all documents relating to your transfer, or attempted transfer, of any and all rights of distribution of Power Plate equipment under your written Licensee Agreements with PPI to any other person or entity, including, but not limited to (a) any communications, negotiations, dealings, and/or agreements in any form with (i) any and all "sub-distributors"

and/or "representatives" in any country, (ii) Power Plate Trading, LLC, (iii) Mohamad Ali Rashid Suwailem Ajtabi, (iv) any person or entity within the nation of Lebanon, (v) HSBC Bank Middle East, (vi) the Landmark Group, (vii) Punj Lloyd, (viii) Sam International General Trading LLC, (ix) the Republic of Iran, and (x) any and all internet search engine entities and/or websites; and (b) your contention that PPI at any time authorized – directly or indirectly, explicitly or implicitly – any such transfer or attempted transfer of your Power Plate equipment distribution rights under the written Distribution Agreement(s) between you and PPI.

6. Any and all documents relating to the countries in which, you contend, you were authorized by the written Distribution Agreement(s) between HMET and PPI to distribute Power Plate equipment, including, but not limited to, documents relating to the following: (a) your contention that you were authorized to distribute Power Plate equipment in Bangladesh, Eritrea, Ethiopia, India, Iraq, Kenya, Libya, Morocco, Nepal, Pakistan, Sri Lanka, Sudan, Tunisia, and Zanzibar, as stated in your website; (b) your contention that you had an "exclusive contract for the whole Middle East, Africa – except South Africa – and India" with PPI for the distribution of Power Plate equipment, as set forth in Exhibit 13 to PPI's Plea Notes of 19 December 2006; (c) your contention that you were authorized to distribute Power Plate equipment "in all Islamic countries;" (d) your contention that PPI had no exclusive distributors in Morocco and Tunisia prior to the time you attempted to obtain those distributorships; (e) your contention that PPI at any time authorized you – directly or indirectly, explicitly or implicitly – to obtain or to exercise any exclusive distributorship in any of the foregoing countries, including documents relating to any communications between you, on the one hand, and Mascha van der Meer and/or Birgit Radszat, on the other; (f) any and all "leads" that, you contend, PPI provided to you with respect to the distribution of Power Plate equipment outside of the countries expressly covered by your

written Distribution Agreement(s) with PPI; and (g) your creation and operation of a website with the URL www.powerplateme.com.

7.  Any and all documents relating to communications, negotiations, and/or agreements, in whatever form, between you and (a) any and all actual and/or potential competitors of PPI, and (b) any and all customers or clients of PPI located and/or residing in countries in which you were not expressly authorized to distribute Power Plate equipment under the Licensee Agreements, including, but not limited to, Virgin Active, Virgin Atlantic, and Madonna.

8.  Any and all documents relating to any and all claims and/or contentions that you have made, submitted, or asserted in the Foreign Litigation, including, but not limited to, those relating to PPI's alleged breach of the Licensee Agreements, as well as any and all documents relating to any communications with any person regarding Respondents, PPI, and/or the Foreign Litigation.

9.  Any and all documents relating to communications internal to Power Plate, including communications between and/or among any Power Plate directors, officers, employees, agents, representatives, distributors, and/or in-house or outside counsel.

10. Any and all documents relating to your assets, income, expenses, and debts, including, but not limited to, income tax returns, employment agreements, employment termination letters, payroll statements, paychecks, distributions, shareholder agreements, stock holdings, stock options, restricted shares, returns of capital, capital appreciation, interest income, bank statements, loan statements, books and records, balance sheets, income statements, profit and loss statements, cash flow analyses, net worth analyses, financial statements (audited and/or unaudited), sales figures, marketing expenses, real estate closing documents, real estate

assessments and/or valuations, business valuations, bankruptcy petitions, liens, attachments, and legal claims and/or judgments against you.

11. Any and all documents relating to your contention that you have suffered any financial loss or damage as a result of any alleged wrongdoing on the part of any defendant in the Foreign Litigation, including, but not limited to, documents relating to the following: (a) your contention that you are entitled to 22 million Euros in damages as a result of PPI's alleged breach of your written Distribution Agreement(s) with PPI; (b) your contention that HMET controlled 19% of world-wide Power Plate sales (exclusive of the United States and the Netherlands) immediately prior to the termination of the operative written Distribution Agreement; (c) your contention that you have suffered any financial loss or damage as a result of PPI's sales of any of its patent rights to any other person or entity; (d) your contention that you have suffered any financial loss or damage with respect to your ownership and/or operation of a fitness center in Dubai, U.A.E. (the Power Plate Center); (e) your contention that you incurred marketing costs related to your attempts to establish distributorships in countries not explicitly set forth in the Licensee Agreements; (f) your 30 September 2006 offer to sell your interests in HMET to PPI for a figure seven (7) times your claimed annual net profit from the operation of HMET; (g) sales projections for HMET; (h) forward-looking business plans, projections, pro formas, and/or other estimates of your anticipated future financial performance with respect to your distribution of Power Plate equipment; (i) any and all expert analyses and/or valuations of your claimed financial losses or damages; and (j) any and all lay or expert analyses of the opinions rendered by PricewaterhouseCoopers and by Deloitte & Touche in the Foreign Litigation with respect to your claimed damages in that Litigation.

9

12. Any and all documents relating to any and all policies of insurance that you carried on any of the HMET Group entities, including, but not limited to, insurance policies, amendments, and riders; insurance claims; tender letters; coverage letters; insurance payments; and/or reimbursements, indemnifications, and/or subrogations.

Dated: April 14, 2008

                              LEVENFELD PEARLSTEIN, LLC

By: _____
Scott A. Meyers
Kurt Stitcher
David W. Porteous
Amy A. Pines
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
Phone: (312) 346-8380
Facsimile: (312) 346-8434
kstitcher@lplegal.com

*Attorneys for Respondents Lee Hillman,
Mark Minter, and Power Plate North America*

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2008, I caused a copy of the attached document to be served by hand delivery and by email upon Peter V. Baugher and Lindsay Wilson Gowin of Schopf & Weiss LLP, One South Wacker Drive, 28th Floor, Chicago, Illinois, 60606.

_____
David W. Porteous